**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Gerrity v. Chervenak*, **Slip Opinion No. 2020-Ohio-6705.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-6705

GERRITY, APPELLANT, *v.* CHERVENAK, TRUSTEE, APPELLEE, ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Gerrity v. Chervenak*, Slip Opinion No. 2020-Ohio-6705.]**

*Dormant Mineral Act—Notice to holders of mineral interests—Reasonableness of search for owners—After reasonable, unsuccessful search for holders, surface owners may provide notice by publication.*

(No. 2019-1123—Submitted June 17, 2020—Decided December 17, 2020.)

APPEAL from the Court of Appeals for Guernsey County, No. 18 CA 26, 2019-Ohio-2687.

_____

FRENCH, J.

{¶ 1} This appeal calls upon this court to once again address provisions of the Ohio Dormant Mineral Act, R.C. 5301.56. In particular, we now consider the reach of the notice requirements that R.C. 5301.56(E)(1) imposes as prerequisites to deeming a severed mineral interest abandoned and vested in the owner of the land subject to the mineral interest.

*Facts and Procedural Background*

{¶ 2} Unlike many cases concerning mineral interests, this case's facts are neither disputed nor complicated. Appellee, John E. Chervenak, trustee of the Chervenak Family Trust ("Chervenak"), owns approximately 108 acres of land in Guernsey County, Ohio. The rights to the minerals underlying that property were severed in a warranty deed, filed in November 1961, in which T.D. Farwell transferred the surface rights but reserved to himself "all minerals (coal, oil and gas) underlying" the property. John and Gloria Chervenak acquired the surface estate by warranty deed recorded in November 1999. They transferred the property to the Chervenak Family Trust by quitclaim deed recorded in March 2015.

{¶ 3} In 2012, a title search for the Chervenak property identified Jane F. Richards, Farwell's daughter, as the owner of the severed mineral rights, as evidenced by a certificate of transfer filed with the Guernsey County Recorder in October 1965. The certificate of transfer lists a Cleveland, Ohio address for Richards. The Chervenak chain of title contained no other records regarding ownership of the severed mineral interest.

{¶ 4} Richards died in 1997. At the time of her death, she was a Florida resident. Appellant, Timothy Gerrity, is Richards's son and sole heir. He claims that he is the rightful owner of the mineral rights underlying the Chervenak property as a result of the probate of Richards's estate in Florida. The records filed with the Guernsey County Recorder, however, contain no evidence of Richards's death or of Gerrity's inheritance of the mineral interest.

{¶ 5} In June 2012, seeking to reunite the severed mineral interest with the surface estate pursuant to the Dormant Mineral Act, the Chervenaks recorded with the Guernsey County Recorder an affidavit of abandonment of the severed mineral interest. As relevant here, the affidavit stated that notice of abandonment had been sent by certified mail to Richards at her last known address—the Cleveland address listed in the 1965 certificate of transfer—but had been returned, marked "Vacant-

Unable to Forward." It also stated, "Richards, her unknown heirs, devisees, executors, administrators, relicts, next of kind [sic] and assigns" had been served notice of abandonment by publication on May 4, 2012. In July 2012, the Chervenaks filed with the Guernsey County Recorder a notice of the mineral-interest holder's failure to file a contrary claim and requested that the recorder note in the margins of the 1961 deed and the 1965 certificate of transfer that the mineral interest had been abandoned.

{¶ 6} Five years later, in August 2017, Gerrity filed this action in the Guernsey County Court of Common Pleas to quiet title and for a declaratory judgment that he is the exclusive owner of the mineral rights. Gerrity claims that the Chervenaks' purported use of the Dormant Mineral Act was ineffective because they did not comply with the act's notice requirements. Chervenak filed a counterclaim to quiet title and for a declaratory judgment that by operation of the Dormant Mineral Act, the trust is the owner of the mineral rights.

{¶ 7} Gerrity and Chervenak each moved for summary judgment. Without any written analysis of the parties' arguments or the applicable law, the trial court entered summary judgment for Chervenak and declared the trust the owner of the mineral rights. In a split decision, the Fifth District Court of Appeals affirmed the trial court's judgment. 2019-Ohio-2687, 140 N.E.3d 164. This court has accepted Gerrity's discretionary appeal. 157 Ohio St.3d 1440, 2019-Ohio-4211, 132 N.E.3d 700.

*Analysis*

{¶ 8} We have previously recognized the common practice in mineral-producing regions of severing the rights to subsurface minerals from the rights to the surface of land. *Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 7. We have further recognized that as severed mineral interests are divided or transferred, often over long periods of time, it can become "difficult, or even impossible, to find the owners of such severed mineral rights." *Id.*; *see also*

*Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, ¶ 16. The General Assembly enacted the Dormant Mineral Act in 1989 as a supplement to the Ohio Marketable Title Act, R.C. 5301.47, et seq., to address that challenge and to provide a mechanism for reuniting abandoned, severed mineral interests with the surface estate. *Dodd* at ¶ 7-8.

{¶ 9} As amended in 2006, the Dormant Mineral Act provides that unless a severed mineral interest is in coal or is coal related, the interest is held by the United States, the state or any other political body described in the statute, or a saving event enumerated in R.C. 5301.56(B)(3) has occurred within the preceding 20 years, the mineral interest "shall be deemed abandoned and vested in the owner of the surface of the lands" if the surface owner has satisfied the requirements of R.C. 5301.56(E). R.C. 5301.56(B). R.C. 5301.56(E) states:

Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall do both of the following:

(1) Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

(2) At least thirty, but not later than sixty days after the date on which the notice required under division (E)(1) of this section is

4

served or published, as applicable, file in the office of the county recorder of each county in which the surface of the land that is subject to the interest is located an affidavit of abandonment that contains all of the information specified in division (G) of this section.

{¶ 10} A surface owner's failure to satisfy R.C. 5301.56(E) precludes application of the Dormant Mineral Act and renders unnecessary any further analysis. *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800, ¶ 20.

{¶ 11} The question here is whether the Chervenaks satisfied R.C. 5301.56(E)(1). The Fifth District majority held that the Chervenaks complied with the statute by (1) sending by certified mail to Richards's last-known address a letter containing the notice of abandonment, which had been returned as undeliverable, (2) unsuccessfully searching Cuyahoga and Guernsey County records for further information, and (3) then publishing notice to Richards and her unknown heirs. 2109-Ohio-2687, 140 N.E.3d 164, at ¶ 25-26.

{¶ 12} Gerrity asks this court to reverse the Fifth District's judgment and to adopt two propositions of law regarding R.C. 5301.56(E)(1). First, he asks the court to hold that the Dormant Mineral Act requires strict compliance, such that a surface owner must identify and attempt service by certified mail on every holder of a mineral interest. He argues that the act does not apply unless all holders are identified. Second, if the court disagrees with his position that the act requires the identification of every holder of a severed mineral interest, Gerrity asks the court to hold that a surface owner must use certain specified search methods designed to locate all holders of the severed mineral interest to satisfy due process and the reasonable-diligence requirement underlying R.C. 5301.56(E).

**Application of the Dormant Mineral Act is not limited to circumstances in which every holder of a severed mineral interest has been identified**

{¶ 13} Gerrity argues under his first proposition of law that the Dormant Mineral Act requires a surface owner to both identify all holders of the severed mineral interest and attempt to serve notice of abandonment to all holders by certified mail before resorting to notice by publication. He maintains that the severed mineral interest here could not be deemed abandoned and vested in the Chervenaks under the Dormant Mineral Act because R.C. 5301.56(E)(1) required the Chervenaks to identify and attempt to serve him, as a holder under the statute, with notice of abandonment by certified mail. But reading R.C. 5301.56 as a whole and in light of the General Assembly's codified legislative intent, we reject Gerrity's arguments.

{¶ 14} To determine the meaning of a statute, we look first to the statutory language. *Boley v. Goodyear Tire & Rubber Co.*, 125 Ohio St.3d 510, 2010-Ohio-2550, 929 N.E.2d 448, ¶ 20. We read statutory words and phrases in the context of the whole statute and presume that the General Assembly intended the whole statute to be effective. *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St.3d 96, 102, 543 N.E.2d 1188 (1989); R.C. 1.47(B). When the meaning of the statutory language is clear and unambiguous, we apply it as written; only if the language is ambiguous will we look to additional means of statutory interpretation. *Cheap Escape Co., Inc. v. Haddox, L.L.C.*, 120 Ohio St.3d 493, 2008-Ohio-6323, 900 N.E.2d 601, ¶ 9, 13.

{¶ 15} Gerrity first maintains that application of the Dormant Mineral Act is limited to those circumstances in which the owner of the surface estate identifies every holder of the severed mineral interest. R.C. 5301.56(A)(1) broadly defines "holder" to include "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate * * * that it is adverse to the interest of the record

6

holder." As Richards's sole heir and as successor to her interest in the mineral rights, Gerrity qualifies as a "holder" under R.C. 5301.56(A)(1). But Gerrity's status as a "holder" under R.C. 5301.56(A)(1) does not resolve his first proposition of law, which more broadly questions whether the Dormant Mineral Act applies only to circumstances in which a surface owner identifies every holder. Answering that question requires us to review the statute as a whole, evaluating words in their context in order to arrive at a fair reading of the text. *See Great Lakes Bar Control, Inc. v. Testa*, 156 Ohio St. 3d 199, 2018-Ohio-5207, 124 N.E.3d 803, ¶ 9.

{¶ 16} Because Gerrity is a "holder" under the Dormant Mineral Act, he argues that the Chervenaks would be in compliance with the statute's requirements only if Gerrity were identified in the notices required by R.C. 5301.56(E)(1). Again, R.C. 5301.56(E)(1) requires that prior to filing the affidavit of abandonment, the Chervenaks, as the owners, should have done the following:

> Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

Gerrity contends that because R.C. 5301.56(F)(1) states that the notice required under R.C. 5301.56(E)(1) "shall contain * * * [t]he name of each holder and the holder's successors and assignees, as applicable," the only way that an interest can be abandoned is if each holder is specifically named in the notice.

{¶ 17} We cannot, however, read R.C. 5301.56(F)(1) in isolation. Its mandate must be understood in light of the rest of the statutory scheme, including R.C. 5301.56(E)(1), which contains an express provision for notice by publication when service of notice by certified mail "cannot be completed to any holder." Plainly, when a holder cannot be identified, service by mail cannot be completed on that holder. At that point, notice by publication is permitted under the express terms of R.C. 5301.56(E)(1). It would strain credulity to read R.C. 5301.56(E)(1) to allow notice by publication when a holder cannot be identified, but at the same time to require identification of the holder in the notice itself.

{¶ 18} On the other hand, reading the provision to not require identification of an unidentified holder is consistent with the qualifier in R.C. 5301.56(F)(1) that the notice shall identify "each holder and the holder's successors and assignees, *as applicable*." (Emphasis added.) When notice is being provided through publication because a holder cannot be identified, the identity of the holder is "not applicable."

{¶ 19} Considering R.C. 5301.56(F)(1) in the context of R.C. 5301.56(E)(1)'s explicit grant of authority for notice by publication, we think the best reading of the statute is that a surface owner need not specifically identify by name every holder, as broadly defined in R.C. 5301.56(A)(1).

{¶ 20} Such a reading is consistent with the General Assembly's codified legislative intent that the Dormant Mineral Act "be liberally construed to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title." R.C. 5301.55. With an eye toward the development of Ohio's mineral resources, the General Assembly enacted the Dormant Mineral Act to address the difficulty (and sometimes impossibility) of identifying the owners of severed mineral interests and to encourage reliance on record chains of title. *Dodd*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, at ¶ 8; *Corban*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, at ¶ 27.

{¶ 21} Construing the Dormant Mineral Act as ineffective unless the surface owner identifies every mineral-interest holder, including every successor or assignee of a record holder, would negate the express legislative purpose of the act. No matter the effort expended, a surface owner can never be certain that he has identified every successor and assignee of every holder who appears in the public record. Limitation of the Dormant Mineral Act in the manner Gerrity proposes would lead to uncertainty and would open every reunification under the act to a later challenge—and perhaps undoing—by a previously unknown heir or assignee who did not appear in the public record. That uncertainty would inhibit the General Assembly's stated intention to promote the development of the state's mineral resources. By authorizing notice by publication, as opposed, for example, to service by ordinary mail when service by certified mail cannot be completed, the General Assembly has at least tacitly acknowledged that not all heirs of a party who has reserved a mineral interest may be identifiable or locatable. And again, nothing in the statutory text precludes the use of publication to notify classes of unknown or potential holders. Consistent with the codified and undisputed purpose of the Dormant Mineral Act, we reject Gerrity's argument that the act operates only when the surface owner specifically identifies by name every holder, as broadly defined in R.C. 5301.56(A)(1).

{¶ 22} We also reject Gerrity's related argument that a surface owner must *attempt* service of notice by certified mail on every holder before the surface owner may resort to notification by publication under R.C. 5301.56(E)(1). R.C. 5301.56(E) mandates that a surface owner "shall" comply with R.C. 5301.56(E)(1) and (E)(2) before a severed mineral interest may vest in the surface owner.

{¶ 23} Read together, the introductory language of R.C. 5301.56(E) and the first sentence of R.C. 5301.56(E)(1) provide that a surface owner "shall" serve notice of the owner's intent to declare the mineral interest abandoned "by certified mail * * * to each holder or each holder's successors or assignees, at the last known

address of each." A statute's use of "shall" connotes a mandatory obligation unless other statutory language clearly indicates a contrary intent. *Wilson v. Lawrence*, 150 Ohio St.3d 368, 2017-Ohio-1410, 81 N.E.3d 1242, ¶ 13. But the second sentence of R.C. 5301.56(E)(1), with its express acknowledgement that certified-mail service to each holder may not be possible, indicates that the legislature did *not* intend service by certified mail to be mandatory. *Id*.

{¶ 24} The language of R.C. 5301.56(E)(1) does not mandate an attempt at service by certified mail when it is apparent that such service cannot be completed. The statute does not identify circumstances in which service of notice by certified mail will be deemed incapable of completion, nor does it limit itself to those circumstances in which notice by certified mail has been returned as undeliverable. Rather, by its plain language, the statute operates *anytime* service of notice by certified mail "cannot be completed to any holder." This includes circumstances in which a holder's identity or address is unknown. "It would be absurd to absolutely require an attempt at notice by certified mail when a reasonable search fails to reveal addresses or even the names of potential heirs who must be served." *Shilts v. Beardmore*, 7th Dist. Monroe No. 16 MO 0003, 2018-Ohio-863, ¶ 15. When it appears from the outset that service of notice cannot be completed by certified mail, as when a holder is unidentified or unlocatable, R.C. 5301.56(E)(1) permits service of notice by publication.

**A surface owner must use reasonable diligence to identify and locate holders of a severed mineral interest, but what constitutes reasonable diligence will vary, based on the facts of each case**

{¶ 25} Having rejected Gerrity's arguments that the Dormant Mineral Act applies only when a surface owner specifically identifies every holder and additionally attempts to serve all such persons with notice by certified mail, we must consider what R.C. 5301.56(E)(1) *does require* of a surface owner. We therefore turn to Gerrity's second proposition of law, under which he maintains that

a surface owner must employ "reasonable search methods * * * designed to locate" all holders before using notice by publication under R.C. 5301.56(E)(1).

{¶ 26} Before getting to the heart of his second proposition of law—that a surface owner must employ reasonable search methods to identify all holders—Gerrity first likens the publication provision in R.C. 5301.56(E)(1) to Civ.R. 4.4(A)(1) and R.C. 2703.24 and urges this court to import the requirements of those provisions into the Dormant Mineral Act. Both Civ.R. 4.4. and R.C. 2703.24 involve service of process—a prerequisite for a trial court's exercise of personal jurisdiction over a defendant. *See Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 64, 133 N.E.2d 606 (1956) ("It is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance"). Civ.R. 4.4 requires a party who is requesting service of process by publication to file an affidavit that "aver[s] that service of summons cannot be made because the residence of the party to be served is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the party to be served, and that the residence of the party to be served cannot be ascertained with reasonable diligence." And R.C. 2703.24, which governs when an action may proceed against a party whose name is unknown, requires the plaintiff to request a court order authorizing publication of notice by filing an affidavit stating that a necessary party's name and address is unknown to the plaintiff.

{¶ 27} The Dormant Mineral Act's extrajudicial process for reuniting severed mineral interests does not implicate the jurisdictional concerns underlying Civ.R. 4.4 and R.C. 2703.24. Nevertheless, Gerrity suggests that R.C. 5301.56(E)(1), to the extent that it may be used at all with respect to an unidentified holder of a severed mineral interest, be read in pari materia with R.C. 2703.24, so as to require the surface owner to file a judicial action and to request a court order authorizing publication by filing an affidavit setting out the surface owner's efforts to identify and locate unknown or unlocatable holders. The General Assembly has

not incorporated the requirements of Civ.R. 4.4 or R.C. 2703.24—or any similar requirements—into the Dormant Mineral Act as prerequisites for using notice by publication, and this court may not do so by judicial fiat. *See Wheeling Steel Corp. v. Porterfield*, 24 Ohio St.2d 24, 27-28, 263 N.E.2d 249 (1970) (this court may not "legislate to add a requirement to a statute enacted by the General Assembly").

{¶ 28} Gerrity goes on to argue that at a minimum, a surface owner who wishes to utilize the Dormant Mineral Act must exercise reasonable diligence to identify all holders of the severed mineral interest. The Seventh District Court of Appeals has recently evaluated efforts to identify heirs to a mineral interest using a reasonableness standard. *Sharp v. Miller*, 2018-Ohio-4740, 114 N.E.3d 1285 (7th Dist.), ¶ 17; *Shilts*, 7th Dist. Monroe No. 16 MO 0003, 2018-Ohio-863, at ¶ 15. It has held that when "a reasonable search fails to reveal the names or addresses of potential heirs who must be served," a surface owner need not attempt to provide notice by certified mail under R.C. 5301.56(E)(1). *Sharp* at ¶ 16, citing *Shilts* at ¶ 15. The court refused, however, to create a bright-line rule as to what constitutes reasonable diligence: "Because the standard relies on the reasonableness of any party's actions, whether that party's efforts constitute 'due diligence' will depend on the facts and circumstances of each individual case." *Sharp* at ¶ 17.

{¶ 29} *Shilts* involved the ownership of mineral rights reserved by ten grantors in a 1914 deed. *Shilts* at ¶ 2. The appellant, an heir of one of the original grantors, challenged the surface owner's publication in 2012 of notice of an intent to declare the mineral interest abandoned. The Seventh District rejected that challenge because it concluded that the surface owner had made reasonable, albeit unsuccessful, efforts—including a search through public records, coupled with an Internet search—to locate the original grantors' heirs. *Id.* at ¶ 12. It stated, "When counsel's search did not reveal information regarding these heirs, it became clear that service could not be completed through certified mail." *Id.* at ¶ 15. The court held that the surface owner therefore appropriately used notice by publication,

naming the original reserving parties "and their unknown heirs, devisees, executors, administrators, relicts, and next of kin." *Id.* at ¶ 14. Although the surface owner in *Shilts* did conduct an Internet search as part of his search for the heirs, nothing in the Seventh District's opinion suggests that an Internet search is required to demonstrate reasonable diligence, and Gerrity misconstrues the opinion by suggesting otherwise.

{¶ 30} In *Sharp*, the Seventh District reiterated, "An attempt to provide notice by certified mail is unnecessary where a reasonable search fails to reveal the names or addresses of potential heirs who must be served." *Sharp* at ¶ 16, citing *Shilts* at ¶ 15. The surface owner in *Sharp* unsuccessfully searched available public records, including probate records and recorded deeds, but not the Internet, for heirs to a 1944 mineral reservation. *Id.* at ¶ 21. Consistent with its refusal to create a bright-line rule, the Seventh District clarified that an Internet search is not a necessary component of reasonable diligence. Looking to the facts and circumstances of that case, the court found no evidence that "a simple Internet search" would have revealed the heirs. *Id.*

{¶ 31} Gerrity and Chervenak both encourage this court to do what the Seventh District has refused to do—adopt a bright-line rule that defines the steps a surface owner must take to identify and locate holders of a severed mineral interest to comply with R.C. 5301.56(E)(1). The bright-line rules they propose, however, could not be more different. Gerrity proposes a rule that would require a surface owner to search not only public records but also online resources, including subscription-based genealogy services, and to document those efforts. Chervenak, on the other hand, advances a rule that would require a surface owner to search only the surface owner's own record chain of title for the identity of mineral-interest holders. We decline to adopt either proposed rule. Instead, because every case will be different, we agree with the Seventh District that whether a party has exercised reasonable diligence will depend on the facts and circumstances of each case. *See*

*Sharp*, 2018-Ohio-4740, 114 N.E.3d 1285, at ¶ 17. If there is to be a bright-line rule delineating what a surface-owner must do to comply with the Dormant Mineral Act, it should come from the General Assembly, not from this court.[1] Nevertheless, without drawing a bright line, we can provide guidance in the context of the facts before us, and we turn to those facts now.

**{¶ 32}** In support of his motion for summary judgment, Chervenak submitted an affidavit from Barbara K. McCombs, the paralegal who performed the title search of the Chervenak property in 2012. McCombs's review of the Chervenak chain of title identified Richards as the sole holder of the severed mineral estate and listed a Cleveland address for Richards. McCombs conducted a broader search of public records from the Guernsey County Recorder's Office and the Guernsey County Probate Court, but that search did not reveal a more recent address, an estate or any heirs for Richards. McCombs did not stop her search there, however. Because the certificate of transfer that memorialized Richards's acquisition of the mineral interest listed a Cuyahoga County address for Richards, McCombs searched in the Cuyahoga County Recorder's Office and the Cuyahoga County Probate Court for records that would establish an estate for Richards, name any heirs for Richards or provide a more recent address for Richards. As with her search of the Guernsey County public records, McCombs's search of the Cuyahoga County public records offered no indication that Richards had died or had transferred the mineral interest. Neither did it uncover a more recent address for Richards.

---

1. There is currently pending before the General Assembly legislation to amend the Dormant Mineral Act. *See* 2019 H.B. 100. As relevant here, the proposed legislation would allow service by publication when a surface owner cannot attempt or complete notice by certified mail after conducting a search of public records, and it would define "public record" as "any document pertaining to a mineral interest filed or recorded with the auditor, recorder, and all courts situated within each county in which the lands subject to the mineral interest are located." *Id.*

{¶ 33} Having uncovered no address for Richards more recent than that listed in the 1965 certificate of transfer and no information regarding successors, heirs or assigns of Richards's interest in the mineral rights, the Chervenaks sent notice by certified mail, directed to Richards at the Cleveland address. When that notice was returned as undeliverable, the Chervenaks published notice of their intent to declare the mineral interest invalid in *The Jeffersonian*, a newspaper of general circulation in Guernsey County. Like the Fifth District majority, *see* 2019-Ohio-2687, 140 N.E.3d 164, at ¶ 25, under the facts of this case, we conclude that the Chervenaks exercised reasonable diligence to identify holders of the severed mineral interest.

{¶ 34} Gerrity criticizes the Chervenaks for not searching the Internet for a more recent address for Richards to determine whether Richards was still living and to identify any heirs. Gerrity has suggested that the Chervenaks could have located Richards's obituary online and could have identified him as Richards's heir by conducting a genealogy search for Farwell, who originally reserved the mineral interest, using the subscription databases on Ancestry.com. The record, however, contains no specific evidence of what an Internet search would have revealed in 2012, when the Chervenaks followed the Dormant Mineral Act. We decline to impose the requirements that Gerrity has proposed as a matter of law. The ever-changing quantum and quality of information available on the Internet, the inconsistent reliability of that information, and the variability of Internet-search results all weigh against a bright-line requirement for online searches, let alone a bright-line requirement that a surface owner consult any particular paid subscription services, to identify heirs to a severed mineral interest.

{¶ 35} The surface owner's chain of title is the necessary starting point for determining the applicability of the Dormant Mineral Act. Before issuing notice of an intent to declare a severed mineral interest abandoned, the surface owner must first determine whether the Dormant Mineral Act applies. A severed mineral

interest may not be deemed abandoned and vested in the owner of the surface of the lands subject to the interest if any of the six saving events set out in R.C. 5301.56(B)(3) has occurred within the previous 20 years. Four of those saving events—each one that does not involve actual use of the mineral interest—requires a filing, recording or notation in the property records of the county in which the surface property is located. *See* R.C. 5301.56(B)(3)(a), (d), (e), and (f). Accordingly, the surface owner must consult the public-property records in the county in which the surface property is located to determine whether a saving event has occurred. If no saving event is evident, the surface owner must also consult the chain of title to determine the record holder or record holders of the mineral interest—the starting point for determining who the surface owner must attempt to notify pursuant to R.C. 5301.56(E)(1). In addition to property records in the county in which the land that is subject to the mineral interest is located, a reasonable search for holders of a severed mineral interest will generally also include a search of court records, including probate records, in that county.

{¶ 36} Review of public-property and court records in the county where the land subject to a severed mineral interest is located will generally establish a baseline of reasonable diligence in identifying the holder or holders of the severed mineral interest. There may, however, be circumstances in which the surface owner's independent knowledge or information revealed by the surface owner's review of the public-property and court records would require the surface owner, in the exercise of reasonable diligence, to continue looking elsewhere to identify or locate a holder. But whether that additional search is required will depend on the circumstance of each case, and it was not required in this case. McCombs's diligent search of the public records in both Guernsey County and Cuyahoga County revealed no indication that the sole record holder was deceased and offered no clue as to the identity of any potential successors or assigns.

**{¶ 37}** Finally, to the extent that Gerrity raises a due-process challenge to R.C. 5301.56(E)(1) or its application when a mineral-interest holder cannot be identified, we reject that challenge based on the United States Supreme Court's holding in *Texaco v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982).

**{¶ 38}** In *Texaco*, the Supreme Court rejected constitutional challenges to Indiana's Dormant Mineral Interests Act, which operated to automatically extinguish a severed mineral interest after a 20-year period of nonuse unless the mineral-interest holder filed a claim to preserve the interest. *Id.* at 518-519. The self-executing Indiana statute did not require a surface owner to take any action or to provide any notice to the mineral-interest holder before the mineral interest lapsed and reunited with the surface estate by operation of law. *Id.* at 520.

**{¶ 39}** The appellants in *Texaco* unsuccessfully claimed, in part, that the lack of direct notice prior to the lapse of their mineral interests deprived them of property without due process of law. *Id.* at 522. The Supreme Court disagreed and held that a state may condition the permanent retention of a property right "on the performance of reasonable conditions that indicate a present intention to retain the interest." *Id.* at 526. In rejecting the appellants' due-process argument that they were entitled to specific notice that their interests were about to expire, the court stated, "Generally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Id.* at 532. It reasoned that mineral-interest holders may be presumed to have knowledge of the terms of the act and that pursuant to the act, "an unused mineral interest would lapse unless they filed a statement of claim." *Id.* at 533. It held that the state provided all constitutionally required notice by enacting a statute that informed mineral-interest holders that their interests would be extinguished after 20 years of nonuse. *Id.* at 537.

**{¶ 40}** The version of the Dormant Mineral Act at issue here has been in effect since 2006, and Gerrity may be presumed to have had notice of the act's

provisions, including the statutory actions he could have undertaken, either before or after the Chervenaks filed their notice of abandonment, to prevent the mineral interest from being deemed abandoned and vested in the Chervenaks. Given that the Indiana statute at issue in *Texaco,* which permitted the extinguishment of a mineral interest without any prior notice to the holder besides the existence of the statutory scheme itself, passes constitutional muster, Ohio's Dormant Mineral Act, which affords the additional safeguards of notice by certified mail when possible and notice by publication when certified-mail service is not possible, cannot be said to violate Gerrity's due-process rights.

*Conclusion*

**{¶ 41}** A surface owner attempting to comply with R.C. 5301.56(E) must exercise reasonable diligence to identify all holders of the severed mineral interest, but the inability to identify or locate all such holders does not, in itself, preclude application of the Dormant Mineral Act. When a surface owner's reasonable search fails to reveal the names or addresses of holders of the mineral interest, the surface owner may provide notice by publication, pursuant to R.C. 5301.56(E)(1), and need not attempt to serve the unknown or unlocated holders by certified mail. Because we conclude that the Chervenaks satisfied R.C. 5301.56(E), we affirm the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., concurs in judgment only.

––––––––––––––––––

Baker, Dublikar, Beck, Wiley & Mathews, and James F. Mathews; and Finnucan & Associates, L.L.C., and John C. Finnucan, for appellant.

Kravitz, Brown & Dortch, L.L.C., Michael D. Dortch, and Richard R. Parsons, for appellee.

Yukevich, Marchetti, Fischer, Zangrilli, P.C., and Mark Fischer, urging reversal for amici curiae Harry A. Fonzi III and Linda Grimes.

Scullin and Cunning, L.L.C., and Sean Richard Scullin, urging reversal for amici curiae Jeffrey H. Sharp, Bradley W. Sharp, Gregory C. Smith, J. Kent Smith, Jeffrey S. Smith, Lelah Cline Smith, and Scott Johnson.

Theisen Brock, L.P.A., and Daniel P. Corcoran, urging affirmance for amici curiae Allen B. Miller, Matilda J. Miller, Craig M. Miller, Tina E. Miller, Brenda D. Thomas, Kevin M. Thomas, Gary Brown, the Billiter Family Land Trust, Kerry R. Hartline, Mary E. Hartline, Doris Craig, Paul Craig, Eleanor Craig, Nina Ice, Terry Ice, Sheila Stollar, Roger Stollar, Lisa Meyer, Kenneth Meyer Jr., Helen Craig, Evelyn Craig, Carissa R. Baker, and Corey A. Stollar.

Chad A. Endsley, Leah F. Curtis, and Amy Milam, urging affirmance for amici curiae Ohio Farm Bureau Federation and Guernsey County Farm Bureau.

Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Gregory W. Watts, and Matthew W. Onest, urging affirmance for amici curiae Cassandra Ridenour, Senterra, Ltd., Natalia Toma Trust, (by Stefan Toma, Trustee), Pora Putney Ridge Properties, L.L.C., and Paines Run, L.L.C.

Emens, Wolper, Jacobs & Jasin Law Firm Co., L.P.A., Sean E. Jacobs, and Cody R. Smith, urging affirmance for amicus curiae Ohio River Collieries Company.

————————————