NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-901

FONZI ET AL., APPELLEES, *v.* BROWN ET AL., APPELLANTS.

FONZI ET AL., APPELLEES, *v.* MILLER ET AL., APPELLANTS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Fonzi v. Brown*, Slip Opinion No. 2022-Ohio-901.]**

*Dormant Mineral Act—Abandonment process and required notice to holders of mineral interests—Dormant Mineral Act establishes a single, comprehensive method for surface owners to unify their land with subterranean mineral interests through abandonment—Surface owners did not exercise reasonable diligence when they failed to search public records beyond the county where the mineral interests were located, despite having knowledge that the mineral-interest holder did not reside in that county when the mineral-interest reservation was made.*

(Nos. 2020-0773 and 2020-0861—Submitted September 22, 2021—Decided March 24, 2022.)

APPEALS from the Court of Appeals for Monroe County, Nos. 19 MO 0012, 2020-Ohio-3631, and 19 MO 0011, 2020-Ohio-3739.

———————

**FISCHER, J.**

{¶ 1} In these cases, we are asked to determine whether owners of the surface rights to land complied with the requirements of the Dormant Mineral Act in seeking to have mineral interests in that land deemed abandoned. Based on the particular facts of these cases, we conclude that the surface owners did not exercise reasonable diligence in attempting to identify all holders of the mineral interests, and we accordingly affirm the judgments of the court of appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 2} These cases concern two adjoining parcels of land located in Monroe County. In 1952, Elizabeth Henthorn Fonzi acquired the land. (There is some dispute whether Elizabeth Henthorn Fonzi's husband, Harry A. Fonzi Jr., also became an owner of the land. However, resolution of this issue is irrelevant to our analysis, so for ease of discussion, we will presume that Elizabeth Henthorn Fonzi was the sole individual that acquired the land.) In the deed transferring the property now at issue in the *Brown* case to Fonzi, it was noted that she resided in Finleyville, Washington County, Pennsylvania. Shortly thereafter, she transferred the surface rights in the land to the predecessors-in-interest of the appellants (the "surface owners") in these cases. In both instances, Fonzi reserved an interest in the oil and gas rights in the land. At the time that she made those reservations, Fonzi still lived in Washington County, Pennsylvania, a fact that was expressly noted in the deed transferring property from her to the predecessors-in-interest of the Miller surface owners.

{¶ 3} In more recent years, the surface owners began the process to have the Fonzi mineral interests in the properties abandoned. The surface owners hired an attorney, who, after searching the Monroe County public records and conducting limited Internet searches, failed to uncover any information about Elizabeth

Henthorn Fonzi or locate any potential heirs. The surface owners did not conduct any search beyond Monroe County.

{¶ 4} In 2012 (in the *Miller* case) and in 2013 (in the *Brown* case), the surface owners published notices of intent to declare the Fonzi mineral interests abandoned in a Monroe County newspaper. The surface owners in the *Miller* case subsequently filed affidavits of abandonment in which they stated that notice of intent to declare abandonment had been published in the newspaper. The surface owners in the *Brown* case filed an affidavit of abandonment in which they asserted that service on the mineral-interest holders could not be completed.

{¶ 5} The Fonzi heirs subsequently filed complaints in Monroe County for declaratory judgment and seeking to quiet title, alleging in part that the surface owners had failed to exercise reasonable due diligence in attempting to locate holders of the Fonzi mineral interests before commencing the abandonment process. They further asserted that because the abandonment process was flawed, their mineral interests remain intact and they are owed their share of any royalties under the Fonzi mineral interests. The surface owners filed answers and counterclaims in which they sought, in part, a declaratory judgment and to quiet title based on the Dormant Mineral Act ("DMA"), R.C. 5301.56, and common-law abandonment. In the *Miller* case, the counterclaim also included a claim based on the Ohio Marketable Title Act ("MTA"), R.C. 5301.47 et seq.

{¶ 6} The parties filed competing motions for summary judgment. The trial court granted summary judgment in favor of the surface owners in both cases after concluding, in part, that the surface owners had made reasonable efforts to locate potential heirs and that the Fonzi heirs had failed to file timely claims to preserve their interests. The trial court did not address the MTA counterclaim in the *Miller* case.

{¶ 7} The Seventh District Court of Appeals reversed the trial court's decisions in both cases. *Fonzi v. Brown*, 7th Dist. Monroe No. 19 MO 0012, 2020-

Ohio-3631, ¶ 1; *Fonzi v. Miller*, 2020-Ohio-3739, 155 N.E.3d 986, ¶ 1 (7th Dist.). In both cases, the court explained that before serving notice by publication under R.C. 5301.56(E), the surface owners were required to exercise reasonable due diligence in searching for potential heirs to the mineral interests and further, that "what constitutes reasonable due diligence will depend on the facts and circumstances of each case." *Brown* at ¶ 22-23, 31; *Miller* at ¶ 25-26, 34. The court reasoned that the surface owners knew that Fonzi lived in Pennsylvania at the time that the reservations were made and nonetheless failed to conduct any search beyond the Monroe County records; therefore, the court concluded that the surface owners' searches were unreasonable and that they had failed to comply with the relevant notice requirements. *Brown* at ¶ 32-33; *Miller* at ¶ 35-36. The court accordingly entered summary judgment in favor of the Fonzi heirs in *Brown*. *Brown* at ¶ 36. In *Miller*, the court entered summary judgment in favor of the Fonzi heirs on their DMA claims and remanded the case to the trial court for consideration of the surface owners' MTA counterclaim. *Miller* at ¶ 40.

{¶ 8} We accepted jurisdiction over five propositions of law in the surface owners' appeal in *Brown* and held the case for our decision in *Gerrity v. Chervenak*, 162 Ohio St.3d 694, 2020-Ohio-6705, 166 N.E.3d 1230. *See* 159 Ohio St.3d 1487, 2020-Ohio-4232, 151 N.E.3d 634. We subsequently accepted jurisdiction over the surface owners' appeal in *Miller* (including five propositions of law identical to those raised in *Brown* and an additional sixth proposition of law) and held that case for our decision in *Gerrity* as well. *See* 160 Ohio St.3d 1470, 2020-Ohio-4574, 153 N.E.3d 105.

{¶ 9} Following the announcement of this court's decision in *Gerrity*, we lifted the stays and ordered briefing on the second through fifth propositions of law in both cases. 160 Ohio St.3d 1515, 2020-Ohio-6834, 159 N.E.3d 1175; 160 Ohio St.3d 1516, 2020-Ohio-6834, 159 N.E.3d 1187. We also dismissed the sixth proposition of law in *Miller* as improvidently accepted. 160 Ohio St.3d 1516, 2020-

4

Ohio-6834, 159 N.E.3d 1187. We later granted the Fonzi heirs' consent motion to consolidate oral argument in the two cases. 164 Ohio St.3d 1426, 2021-Ohio-3021, 173 N.E.3d 496.

## II. ANALYSIS

{¶ 10} The timing of the appeals in these cases places them in a procedurally unique situation. The Seventh District issued its decisions before our decision in *Gerrity* was announced, and accordingly, it conducted its analysis without the benefit of the guidance set forth in *Gerrity*. Because *Gerrity* directly informs our analysis of these appeals, we begin by briefly reviewing that decision.

### A. The Gerrity Decision

{¶ 11} In *Gerrity*, 162 Ohio St.3d 694, 2020-Ohio-6705, 166 N.E.3d 1230, a case that involved a mineral-interest holder who resided in a different county than the county where the real property at issue was located, we held that in order to provide proper notice under R.C. 5301.56(E) "[a] surface owner * * * must exercise reasonable diligence to identify all holders of the severed mineral interest," *id*. at ¶ 41. Our opinion did not establish any rebuttable presumptions or state that any particular party carries a burden of proof. We explained that *generally*, a review of public records in the county where the mineral interest is located will "establish a baseline of reasonable diligence." *Id*. at ¶ 36. We declined to draw a bright-line rule in the case and instead "provide[d] guidance in the context of the facts before us." *Id*. at ¶ 31. We stated that in cases involving facts like those in *Gerrity*, the reasonable-diligence standard does not require the surface owner to search records outside of (1) the county where the mineral interest was located and (2) the county where the mineral-interest holder resided, according to the address listed on the certificate of transfer, when there was no indication that the mineral-interest holder had died, moved, or transferred the mineral interest. *Id*. at ¶ 32, 36.

*B. The DMA Creates One Method of Abandonment*

**{¶ 12}** The issues implicated in the propositions of law before us are wide-ranging. Those issues may be resolved, however, by application of the text of the DMA and our decision in *Gerrity*.

**{¶ 13}** We explained in *Gerrity* that the DMA "provide[s] a mechanism for reuniting abandoned, severed mineral interests with the surface estate." *Id.* at ¶ 8. The mechanism is called abandonment. Certain saving events, such as "actual production or withdrawal of minerals," insulate a mineral interest from the DMA's abandonment process for 20 years. R.C. 5301.56(B)(3)(b). The General Assembly amended the DMA in 2006, *see* Sub.H.B. No. 288, 151 Ohio Laws, Part III, 5960, 5966, 5968-5969, to add a notice procedure that "afford[s] a mineral-interest holder the opportunity to preserve that interest." *West v. Bode*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, ¶ 23. Here, much of the surface owners' argument centers on the premise that as a result of the 2006 amendment, the process of abandonment can occur in two ways: first, in a quiet-title action after 20 years pass without a saving event and second, when the mineral-interest holder fails to respond to a notice of abandonment in a process wholly outside of court. According to the surface owners, the required method of serving notice—by mail versus by publication—varies depending on the avenue of abandonment pursued by the surface owner. That premise is faulty, however: the amendment did not create a second method of abandonment but rather made the sole method more robust. To explain why first requires elaboration on the abandonment process under the DMA.

**{¶ 14}** Abandonment is not available until 20 years pass without the occurrence of a saving event. R.C. 5301.56(B)(3). After that point, a surface owner may notify the mineral-interest holder of his or her intent to invoke the abandonment process. R.C. 5301.56(B). The surface owner must "[s]erve notice by certified mail * * * of the owner's intent to declare the mineral interest abandoned." R.C. 5301.56(E)(1). But if service by mail "cannot be completed to

any [mineral-interest] holder, the [surface] owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located." *Id.* The 2006 amendment enables the mineral-interest holder, upon receiving notice of abandonment, to preserve his or her interest by asserting that it "has not been abandoned." R.C. 5301.56(H)(1); *see also* R.C. 5301.56(C)(1)(c). The mineral-interest holder has only 60 days from service of notice to complete the necessary preservation steps. If the mineral-interest holder fails to timely preserve and the surface owner subsequently files "a notice of failure to file," then "the mineral interest shall vest in the owner of the surface of the lands formerly subject to the interest." R.C. 5301.56(H)(2).

{¶ 15} The DMA creates a comprehensive method for abandonment. *See Dodd v. Croskey*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, ¶ 25-30. Compliance with division E's notice requirement is a condition precedent to securing mineral interests through abandonment, R.C. 5301.56(B); *Gerrity*, 162 Ohio St.3d 694, 2020-Ohio-6705, 166 N.E.3d 1230, at ¶ 10, and even after proper service of notice, the mineral-interest holder may retain his or her interest "that is the subject of a notice under division (E)." R.C. 5301.56(H)(1). All DMA abandonments must include notice under division (E). R.C. 5301.56(B). R.C. 5301.56(B), (E), and (H) are interlocking, and division (H)'s post-notice-preservation option is an essential part of every abandonment procedure.

{¶ 16} The DMA allows the mineral-interest holder to reassert his or her interest by filing either a "claim to preserve" or an "affidavit that identifies an event described in division (B)(3)" upon receiving notice under division (E)(1). R.C. 5301.56(H)(1)(a) and (b). This makes sense because the intent of the DMA is to put "dormant" mineral interests back to productive use. *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 25. Thus, if the mineral-interest holder takes positive steps to reaffirm his or her interest upon

receiving notice, then that interest is active, not dormant, and the surface owner is not entitled to take the mineral-interest holder's property. If it were otherwise, then even upon receiving notice, a mineral-interest holder would be left without recourse. That would render service of notice to the mineral-interest holder a mere formality, rather than a meaningful protection of property ownership.

{¶ 17} The surface owners read the DMA differently. They argue that the 2006 amendment created two alternative ways that a mineral interest may be abandoned. First, they contend that if a surface owner files an action to quiet title, a mineral interest is conclusively presumed to be abandoned if 20 years have elapsed without a saving event. Under this view, the mineral-interest holder does not enjoy the post-notice protections in R.C. 5301.56(H)(1)(a) and (b) in a quiet-title action. The 2006 amendment, they assert, added a second, independent avenue by which service of notice under R.C. 5301.56(E) initiates an extrajudicial process of abandonment. Under this view, if a mineral-interest holder receives notice of abandonment, he or she must act to preserve his or her mineral interest within 60 days under R.C. 5301.56(H)(1)(a) or (b) to avoid being divested of that interest.

{¶ 18} The surface owners argue that the first avenue is applicable here— the mineral interest should be deemed abandoned because 20 years elapsed without a saving event. They further contend that notification by publication is all that was required because, under this avenue, there is nothing a mineral-interest holder can do after being notified to preserve the interest. And because they believe notice by publication was sufficient, the surface owners maintain that it does not matter if they did not use reasonable diligence to effect personal service by mail.

{¶ 19} The surface owners' argument is inconsistent with the statutory text and our prior caselaw. As we have explained, the provisions in the DMA should be read in the context of the entire act, not as a collection of isolated sentences. *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, ¶ 49 (Kennedy, J., concurring in judgment only in the answer to the first certified

question and concurring in the answer to the second certified question); *Gerrity*, 162 Ohio St.3d 694, 2020-Ohio-6705, 166 N.E.3d 1230, at ¶ 17. R.C. 5301.56(B) explicitly provides that an interest may be deemed abandoned only if *both* conditions are met: 20 years without a saving event and proper notice under division E. Thus, contrary to the position advanced by the surface owners, we have read the DMA to allow a mineral-interest holder to avoid abandonment *either* by filing an affidavit identifying a saving event or by filing a claim to preserve in response to proper notice from the surface owner. *Dodd*, 143 Ohio St.3d 293, 2015-Ohio-2362, 37 N.E.3d 147, at ¶ 30; *see also West*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298, at ¶ 23. We have never suggested that a claim to preserve is meaningless under the DMA when 20 years has elapsed without a saving event.

{¶ 20} The DMA provides a single method for a surface owner to procure mineral interests through abandonment. Twenty years without a saving event, service by mail (when feasible), and post-notice opportunity to preserve the mineral interest are indispensable elements of the act's abandonment process. We decline the surface owners' invitation to amend the DMA by "judicial fiat." *Gerrity* at ¶ 27.

*C. Surface Owners Must Exercise Reasonable Diligence in Attempting to Identify Mineral-Rights Holders*

{¶ 21} The surface owners' failure to give proper notice under R.C. 5301.56(E) resolves this case. Pursuant to *Gerrity*, a surface owner who fails to exercise reasonable diligence in attempting to identify all holders of the severed mineral interest has not satisfied R.C. 5301.56(E). *See Gerrity* at ¶ 41. Because a surface owner's compliance with R.C. 5301.56(E) is a condition precedent to having a mineral interest deemed abandoned, a surface owner's failure to exercise reasonable diligence in identifying and locating mineral-rights holders is a critical error in the process. Therefore, a surface owner failing to exercise such reasonable diligence is not entitled to abandonment under R.C. 5301.56(B).

{¶ 22} Requiring that a surface owner exercise reasonable diligence is not tantamount to requiring the owner to engage in futile or vain acts. Surface owners are not required to do the impossible and locate undiscoverable holders; instead, they must exercise reasonable diligence in attempting to identify and locate the holders of the mineral interest. In cases like those before us today, the issue is not whether the surface owner *could* have located all mineral-rights holders by exercising reasonable diligence. Instead, the question is whether the surface owner *did* exercise reasonable diligence. If the surface owner did not exercise reasonable diligence, then the mineral rights could not have been deemed abandoned under the DMA. If, however, the surface owner did exercise reasonable diligence, then the mineral rights can rightly be deemed abandoned under the DMA, so long as the remaining requirements and conditions of the DMA have been met.

{¶ 23} We also note that R.C. 5301.56(E) requires that the surface owner "shall" comply with the statutory notice requirements. Compliance with the reasonable-diligence standard is entirely in the hands of the surface owner, and thus, the surface owner has the burden of showing that he or she was reasonably diligent in attempting to identify and locate the holders of the mineral interest before resorting to service by publication. For these reasons, we conclude that in a subsequent action challenging a surface owner's compliance with the DMA's notification requirements, the surface owner has the burden of proving that he or she complied with those requirements and that he or she exercised reasonable diligence in doing so.

*D. The Surface Owners Failed to Exercise Reasonable Diligence*

{¶ 24} The critical question before us now, then, is whether the surface owners exercised reasonable diligence in attempting to identify all holders of the mineral interests in these cases. Answering that question involves a straightforward application of *Gerrity*.

{¶ 25} In *Gerrity*, the surface owner searched public records in both Guernsey County, the county where the mineral interest was located, and Cuyahoga County, the county in which the mineral-rights holder was last known to have resided. 162 Ohio St.3d 694, 2020-Ohio-6705, 166 N.E.3d 1230, at ¶ 2-3, 32. After failing to discover an updated address for the mineral-rights holder, the surface owner sent notice by certified mail at the last known address. *Id*. at ¶ 33. The surface owner attempted service by publication in Guernsey County after the certified-mail notice was returned as undeliverable. *Id*.

{¶ 26} The facts of the cases before us today are markedly different from those in *Gerrity*. In concluding that the surface owner in *Gerrity* exercised reasonable diligence, we emphasized that the surface owner had conducted a "diligent search of the public records" in both the county where the property was located *and* the last known county of residence of the mineral-rights holder. *Id.* at ¶ 36. Here, however, the surface owners' attempts to locate the mineral-rights holders or the holders' successors or assignees fell short of the attempts made in *Gerrity*. The surface owners confined their searches to only the records for Monroe County, where the property was located, and limited Internet research. The surface owners did not attempt to search public records in Washington County, Pennsylvania, despite the fact that the last known residence of the mineral-rights holder was in that location. The Brown surface owners had notice that, at the time the land was transferred to Fonzi, she resided in Finleyville, Pennsylvania (which is in Washington County). Moreover, the deed transferring property from Fonzi to the predecessors-in-interest of the Miller surface owners noted that, at the time of that transfer, Fonzi still resided in Washington County, Pennsylvania. Unlike the surface owner in *Gerrity*, here, the surface owners disregarded information about the last known residence of the mineral-rights holder and made no attempt to make any personal service. Instead, the surface owners proceeded straight to notice by publication.

11

**{¶ 27}** We acknowledge, as we did in *Gerrity*, that "[r]eview of publicly available property and court records in the county where the land subject to a severed mineral interest is located will generally establish a baseline of reasonable diligence in identifying the holder or holders of the severed mineral interest." *Id.* at ¶ 36. Depending on the facts of each case, however, additional searching may be required to satisfy the standard of reasonable diligence. *See id.* In the cases before us in the present appeals, we conclude that the surface owners failed to exercise reasonable diligence in attempting to identify all holders of the mineral interests in question. We accordingly conclude that the surface owners did not satisfy the notice provisions of R.C. 5301.56(E), and we affirm the judgments of the Seventh District on this basis.

## III. CONCLUSION

**{¶ 28}** The DMA establishes a single, comprehensive method for surface owners to unify their land with subterranean mineral interests through abandonment. As explained in *Gerrity*, surface owners seeking to have a mineral interest declared abandoned under the DMA must exercise reasonable diligence in attempting to identify all holders of the mineral interest. Here, because the surface owners failed to search public records beyond the county where the mineral interests were located, despite having knowledge that the mineral-interest holder did not reside within that county when the reservation was made, and because the surface owners failed to even attempt to serve notice on any holder—as required by R.C. 5301.56(E)—before resorting to notice by publication, we conclude that the surface owners failed to exercise reasonable diligence in these cases. We accordingly affirm the judgments of the Seventh District Court of Appeals.

Judgments affirmed.

O'CONNOR, C.J., and KENNEDY, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

————————

Yukevich, Marchetti, Fischer, Zangrilli, P.C., and Mark Fischer, for appellees.

Theisen Brock, L.P.A., Daniel P. Corcoran, and Adam J. Schwendeman, for appellants.

Yoss Law Office, L.L.C., Richard A. Yoss, and Melissa A. Schumacher, urging reversal for amici curiae Richard A. Yoss and M. Marie Yoss.

Kravitz, Brown & Dortch, L.L.C., Michael D. Dortch, Richard R. Parsons, and Justin M. Dortch; and Emens Wolper Jacobs & Jasin Law Firm Co., L.P.A., Sean E. Jacobs, and Cody R. Smith, urging reversal for amicus curiae Ohio River Collieries Company.

_____