[Cite as *Jeffco Resources, Inc. v. Abrecht*, 2023-Ohio-4712.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

JEFFCO RESOURCES, INC.,

Plaintiff-Appellant,

v.

CAROL A. ABRECHT, et al,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 22 HA 0007, 22 HA 0008, 22 HA 0009**

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVH 2018-0014

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Stephen W. Funk*, *Atty Emily Anglewicz, Atty. J. Benjamin Fraifogl, Atty. Jeremy D. Martin,* Roetzel & Andress, LPA, for Appellant-Jeffco and *Atty. Kevin Colosimo, Atty. Christopher W. Rogers, Atty. Daniel P. Craig,* Frost Brown Todd *and Atty. Matthew C. Blickensderfer*, Frost Brown Todd, LLC for Appellant-Ascent and *Atty. Justin H. Werner, Atty. Lucan Liben,* Reed Smith, LLP, for Appellant-Hess, and

*Atty. Thomas D. White, Atty. Katherine M. K. Kimble,* Eques, Inc, for Appellees-Hines heirs.

Dated: December 22, 2023

**Robb, J.**

{¶1} Appellants Jeffco Resources Inc., Hess Ohio Developments, LLC, and Ascent Resources-Utica, LLC appeal the decision of the Harrison County Common Pleas Court granting declaratory judgment to Defendants-Appellees Carol A. Albrecht et al. (the Hines heirs). Appellants contend the trial court erred in finding Jeffco failed to conduct a reasonably diligent search for the mineral interest holders before serving notice of abandonment by publication under the Dormant Mineral Act (DMA). For the following reasons, the trial court's decision is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} In a deed recorded February 4, 1969, May Etta Parrish Hines conveyed property in Cadiz Township to Consolidation Coal Company but excepted and reserved for her heirs and assigns all oil and gas (with the right to extract but without the right to enter the surface). (Vol. 162, P. 866). In a deed recorded May 3, 1988, the coal company transferred to Jeffco 61.86 acres of the property subject to the Hines reservation. (Vol. 225, P. 201).

{¶3} On July 21, 2012, Jeffco published in a local newspaper a notice of abandonment directed to May Etta Parish Hines and Birney W. Hines (wife and husband) and their heirs, next of kin, successors, and assigns. On August 22, 2012, Jeffco recorded an affidavit of abandonment. *See* R.C. 5301.56(E) (to be filed 30 to 60 days after a proper notice).

{¶4} Jeffco waited until November 23, 2016 to record a "memorialization of record" at Vol. 243, P. 2757. *See* R.C. 5301.56(H) (the memorialization can be recorded after 60 days pass without a valid response to the notice of abandonment). Then, Jeffco initiated additional DMA processes for the same property. (Jeffco says they reutilized the DMA because until 2018 this district's law was unclear on whether service of the notice of abandonment must be attempted by certified mail to a decedent's last known address before serving notice by publication.)

{¶5} In May 2017, Jeffco sent a notice of abandonment by certified mail to the last known address of Birney Hines. After the attempted mailing to the known-to-be

deceased individual was returned, Jeffco published another notice of abandonment on July 8, 2017 and recorded an affidavit of abandonment on August 14, 2017.

{¶6}    However, within the 60-day deadline to respond to notice of abandonment, George K. Harrah Jr. filed a claim to preserve on behalf of himself and others he identified as heirs.  Despite this claim to preserve, Jeffco recorded an "affidavit of failure to file" in September 2017.  *See* R.C. 5301.56(H)(2) (2014 change naming the memorialization of record a "notice of failure to file").  On November 8, 2017, Jeffco recorded a corrected affidavit of failure to file to correct a scrivener's error (in citing the page number showing where the affidavit of abandonment was recorded).  Various other heirs then filed claims to preserve.

{¶7}    On March 2, 2018, Jeffco filed a complaint seeking quiet title to the minerals and a declaratory judgment of abandonment under the DMA proceedings initiated in 2012 and/or those initiated in 2017.  They named over 50 defendants, and 37 remain in the suit (the Hines heirs).

{¶8}    The Hines heirs filed a counterclaim against Jeffco, naming Hess and Ascent as additional counterclaim defendants because Jeffco leased the minerals to Hess in 2012 with a later assignment to Ascent.  The Hines heirs sought declaratory judgment as to their ownership (seeking to invalidate the two DMA proceedings) and filed claims for slander of title, trespass, conversion, and unjust enrichment.

{¶9}    In May 2021, Jeffco moved for summary judgment on the claims and counterclaims; Ascent and Hess joined in the motion.  They framed the issue as whether Jeffco made a reasonably diligent search for potential heirs prior to serving the 2012 notice of abandonment by publication.  They argued the public records search did not identify heirs and there was thus no obligation to search outside those records, especially where the probate records of Birney Hines specifically said heirs were unknown.

{¶10} An affidavit was provided by Jeffco's former attorney, who published the 2012 notice of abandonment.  In ascertaining how to serve the notice, he completed a title search and generated an abstract of public records in the county, including the probate records for the estates of Mary Etta Parrish Hines and Birney W. Hines.  The probate records for Mary Etta Parrish Hines showed the following:  she died testate in 1969 (a few months after the severance deed); her estate was not probated until 1971;

she left all property to her husband, Birney Hines; and the estate made no mention of the mineral interest when describing her real estate.

**{¶11}** Birney Hines died intestate without issue on October 5, 1974. There was no mention of the mineral interest in the estate documents. The appointed commissioner of his estate was Richard Kirkland. The estate owed $1,435.90 to Clark-Kirkland Funeral Home and transferred the sole probate asset $1,218.89 in a checking account to this entity. In a box for listing those entitled to inherit, the commissioner's application for release from administration (signed October 25, 1974) said the heirs were unknown.

**{¶12}** On October 31, 1974, the estate commissioner signed and filed an "affidavit for service by publication" stating the *residences* of the heirs were unknown and could not be ascertained with reasonable diligence. The probate court granted release from administration in a November 25, 1974 judgment, reiterating that notice was provided by publication. Jeffco's former attorney said he relied on this information to conclude there were no discernable heirs.

**{¶13}** The summary judgment motion also cited to the deposition testimony of an expert disclosed in discovery by the Hines heirs. In 2016, this expert was hired to find the Hines heirs by a company researching a different portion of the original Hines property for Hess. A title company provided the expert with the county records and the name of a living heir (George Harrah Jr.). The expert conducted interviews and used a subscription version of ancestry.com to build a chart of heirs. The summary judgment motion emphasized this expert acknowledged the heirs could not be ascertained from the county records; he also noted ancestry.com adds information continually.

**{¶14}** In response to the summary judgment motion, the Hines heirs pointed to the remainder of the 1974 probate records from the estate of Birney Hines, which were already incorporated as exhibits by the affidavit of Jeffco's former attorney. The Hines heirs argued reasonable diligence was not exercised in 2012, as these estate documents contained names of individuals who were actual heirs and who should have been viewed as potential heirs and investigated prior to serving notice of abandonment by publication. Specifically, the probate case contained Ohio Department of Taxation estate tax forms, including the inventories of safe deposit boxes at two banks and an estate tax return.

These documents showed Birney Hines owned joint and survivor assets with seven individuals (one of whom signed the tax documents).

{¶15} The inventory for the safe deposit box at the first bank listed Birney Hines and William Sinfield as the box depositors. William Sinfield was the last person to enter the box (in July 1974, three months before the death of Birney Hines). This inventory listed the contents as including two certificates of deposit owned by the decedent joint and survivor, one with William Sinfield ($8,000) and one with Berle Sinfield ($8,000).

{¶16} The inventory for the box at the second bank also listed Birney Hines and William Sinfield as the box depositors and said William Sinfield was the last person to enter the box (in August 1974). This inventory listed the contents as including six certificates of deposit, each owned by Birney Hines and one of the following individuals: Clarence Hines ($1,000), Russell Parrish ($8,000), Dorothy Stover ($1,000), Mildred Edgar ($1,000), Ruth Davis ($1,000), and Berle Sinfield ($1,500). All certificates of deposit were issued the prior year.

{¶17} William Sinfield signed each inventory form on the line for "representative of the estate" (on October 9 and 10, 1974). He also signed a declaration on the estate tax return swearing the information was correct (dated December 3, 1974). On the blank for his address, he wrote Jewett, Ohio (which is a village in Harrison County). Schedule E of the tax return (applicable to joint and survivor accounts) confirmed the names and amounts on the certificates of deposit. It further showed William Sinfield was a joint owner of a savings account with Birney Hines at each bank ($1,071.91 and $2,385.78). Although the incorporated instructions for this schedule required the "name of survivors and relationships" to be listed, the relationships were not stated.

{¶18} Of the seven joint owners named in the estate documents, five were later found to be heirs of Birney Hines during the heirship search conducted by the expert (prior to being retained by the Hines heirs). (Depo. 263-265, 300-303).[1] As to those later found to be heirs, the reply in support of summary judgment argued Jeffco was entitled to rely on the 1974 probate records representing that heirs were unknown. The companies

---

[1] The two joint account owners found not to be heirs of Birney Hines were Ruth Davis and Russell Parrish. We note the last name Parrish corresponds to a name listed for the original surface grantor Mary Etta Parrish Hines, who left all property to her husband Birney Hines when she died.

pointed out a joint and survivor account is a mere contractual relationship, claiming the fact that some joint owners turned out to be heirs was irrelevant to whether search efforts were reasonable. They also claimed the Hines heirs failed to meet their reciprocal summary judgment burden due to the lack of an affidavit explaining what method of search in 2012 would have identified the individuals on those accounts as heirs and would have revealed their addresses.

{¶19} The response to summary judgment filed by the Hines heirs alternatively raised issues with the memorialization of record filed in 2016. The reply in support of summary judgment countered: there was no statutory deadline for the memorialization, a description of the property was provided, and the memorialization reflected the statutory language.

{¶20} The Hines heirs also alternatively responded to the summary judgment motion by arguing Jeffco's voluntary reopening of the DMA proceedings in 2017 by serving new notice of abandonment estopped Jeffco from relying on the DMA proceedings initiated in 2012 (and memorialized in 2016). On this topic, the reply in support of summary judgment argued Jeffco's later efforts were performed out of an abundance of caution and would not erase a prior successful abandonment. After oral arguments in August 2021, the trial court allowed supplemental briefing, which was completed in September 2021.

{¶21} In June 2022, the trial court declared the Hines heirs owned the mineral interest. The court said it was undisputed they filed a timely claim to preserve in response to the 2017 notice of abandonment. Noting Jeffco was relying on the 2012 notice of abandonment, the court then found service of that notice by publication was invalid because easily identifiable heirs were listed in the estate records of Birney Hines but no attempt to serve them was made. The court found the alternative arguments presented by the Hines heirs on the 2012 DMA proceedings or on the estoppel effect of the 2017 DMA proceedings were therefore moot. The entry said the trial would be set on the remaining grounds in the counterclaim seeking damages. (7/11/22 J.E. nunc pro tunc, amending 6/14/22 J.E.).

{¶22} Upon subsequent motion, the trial court concluded there was no just reason to delay an appeal pursuant to Civ.R. 54(B). (8/9/22 J.E.). Jeffco, Ascent, and Hess

(Appellants) filed timely notices of appeal. The three cases were consolidated and Appellants joined in filing a single brief.

**{¶23}** Prior to briefing, the Hines Heirs moved to dismiss the appeal, pointing out they had pending counterclaims. It was emphasized the trial court denied Appellants' summary judgment motion and the Hines heirs did not file a competing summary judgment motion. This court denied the motion to dismiss, holding a final, appealable order resulted after the trial court issued a declaratory judgment on ownership as requested by both sides and made the no just reason for delay finding under Civ.R. 54(B). As our judgment pointed out, "in declaratory actions, we treat a denial of summary judgment as a resolution of the action if the trial court sets forth the rights and responsibilities of the parties in its denial of summary judgment." *Griewahn v. United States Fid. & Guar. Co.*, 160 Ohio App.3d 311, 2005-Ohio-1660, 827 N.E.2d 341, ¶ 8 (7th Dist.). And, as we explained: "Like *Crum*, it would have been preferable for the trial court here to state it was granting judgment for the non-movant (the Hines heirs) or that it was issuing a declaratory judgment in accordance with its legal holdings, we can draw a 'reasonable and logical inference' that the trial court was entering a declaratory judgment that the 2012 notice of abandonment was insufficiently service * * *." (11/18/22 J.E.).

**{¶24}** In the cited *Crum* case, this court explained, "Under the appropriate circumstances, a court that is denying a motion for summary judgment can grant summary judgment to the opposing party even if that party did not file a cross-motion for summary judgment." *Crum v. Yoder*, 7th Dist. Monroe No. 20 MO 0005, 2020-Ohio-5046, ¶ 25, citing *Salem Community Hosp. v. Sankovic*, 7th Dist. Columbiana No. 96-CO-91 (Dec. 31, 1997). This procedure is available "where all relevant evidence is before the court, no genuine issue as to any material fact exists, and the non-moving party is entitled to judgment as a matter of law." *State ex rel. Cuyahoga Cty. Hosp. v. Ohio BWC*, 27 Ohio St.3d 25, 28, 500 N.E.2d 1370 (1986) (granting summary judgment for the non-movant in an original action). *See also Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 17-18; *Houk v. Ross*, 34 Ohio St.2d 77, 296 N.E.2d 266 (1973), paragraph one of syllabus. In accordance, we proceed to address the substance of the trial court's declaration in this case.

Dormant Mineral Act

Case Nos. 22 HA 0007, 22 HA 0008, 22 HA 0009

{¶25} Under the 2006 DMA, a mineral interest "shall be deemed abandoned and vested" in the surface owner if the requirements in division (E) were satisfied and there were no timely division (B)(3) savings events. R.C. 5301.56(B). Division (E) requires the surface owner to serve notice of abandonment (by certified mail or publication as applicable) and then file an affidavit of abandonment with the county recorder between 30 and 60 days after the notice was served or published. R.C. 5301.56(E)(1)-(2). If no claim to preserve or affidavit identifying a savings event is filed within 60 days of service of the notice, then the surface owner shall cause the county recorder to memorialize the abandonment on the record, properly citing to the affidavit of abandonment. Former R.C. 5301.56(H)(2) (changes effective 1/13/14 included renaming the memorialization a "notice of failure to file"). The mineral interest shall vest in the surface owner immediately after the recorder memorializes the record. *Id.*

{¶26} The issue in this appeal revolves around service of the 2012 notice of abandonment under division (E)(1), which says the surface owner shall:

> Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

R.C. 5301.56(E)(1).

{¶27} Among other items, the notice must contain the "name of each holder and the holder's successors and assignees, as applicable * * *." R.C. 5301.56(F)(1). A holder is defined as "the record holder of a mineral interest, and any person who derives the person's rights from, or has a common source with, the record holder and whose claim does not indicate, expressly or by clear implication, that it is adverse to the interest of the record holder." R.C. 5301.56(A)(1).

{¶28} To satisfy the required notice under R.C. 5301.56(E), surface owners "must exercise reasonable diligence in attempting to identify and locate the holders of the

mineral interest." *Fonzi v. Brown*, 169 Ohio St.3d 70, 2022-Ohio-901, 202 N.E.3d 604, ¶ 2; *Gerrity v. Chervenak*, 162 Ohio St.3d 694, 2020-Ohio-6705, 166 N.E.3d 1230, ¶ 41. The reasonable diligence standard does not necessarily require the surface owner to search records outside of the county where the mineral interest is located, such as when the mineral holder resided in that county and there was no indication she died, moved, or conveyed the interest. *Gerrity*, 162 Ohio St.3d 694 at ¶ 32, 36. "[T]he issue is not whether the surface owner could have located all mineral-rights holders by exercising reasonable diligence. Instead, the question is whether the surface owner did exercise reasonable diligence." *Fonzi*, 169 Ohio St.3d 70 at ¶ 22. Still, the surface owner has the burden of proving reasonable diligence was used in attempting to identify and locate the holders of the mineral interest before engaging in the last resort of serving notice of abandonment by publication. *Id.* at ¶ 23.

**{¶29}** In general, a review of public property records and court records in the county where the mineral interest is located will "establish a baseline of reasonable diligence." *Fonzi*, 169 Ohio St.3d 70 at ¶ 27, quoting *Gerrity*, 162 Ohio St.3d 694 at ¶ 36 (while declining to draw a bright-line for the test). "Depending on the facts of each case, however, additional searching may be required to satisfy the standard of reasonable diligence." *Id.*

**{¶30}** In *Gerrity*, a 1965 certificate of transfer showed the holder of the mineral interest was the daughter of the person who originally severed the minerals, and the certificate listed the daughter's address in a different county than where the property was located. In looking for this mineral holder, the surface owner searched the records of the recorder and the probate court in both counties. Certified mail to the mineral holder's last known address was unsuccessful, and the surface owner served notice by publication in the county where the property was located. The Supreme Court concluded this was a reasonably diligent search as the baseline search was conducted, while noting:

> There may, however, be circumstances in which the surface owner's independent knowledge or information revealed by the surface owner's review of the property and court records would require the surface owner, in the exercise of reasonable diligence, to continue looking elsewhere to identify or locate a holder. But whether that additional search is required will

depend on the circumstance of each case, and it was not required in this case [because the public records search] revealed no indication that the sole record holder was deceased and offered no clue as to the identity of any potential successors or assigns.

*Gerrity*, 162 Ohio St.3d 694 at ¶ 36. Distinctly, the records here showed the original mineral holder and her named heir were deceased.

{¶31} In *Fonzi*, the 1952 deed transferring Monroe County property and reserving a mineral interest showed the grantor lived in Washington County, Pennsylvania. *Fonzi*, 169 Ohio St.3d 70 at ¶ 2. Before serving notice of abandonment by publication, the surface owners searched Monroe County public records and performed "limited Internet research" without attempting to search the public records in Washington County, Pennsylvania, even though that was the mineral holder's last known residence. *Id.* at ¶ 26. The trial court granted summary judgment for the surface owners. We reversed, finding this was not a reasonably diligent search. *Fonzi v. Brown*, 7th Dist. Monroe No. 19 MO 0012, 2020-Ohio-3631, ¶ 19 (where the surface owner argued the law did not require a search beyond the public records in the county where the property is located, we explained further search requirements depend on the circumstances), *citing, e.g.*, *Sharp v. Miller*, 2018-Ohio-4740, 114 N.E.3d 1285 (7th Dist.) (where the mineral holders argued an internet search was required for a reasonably diligent search, we rejected a bright-line approach and held the public records search was sufficient because the probate records for the holder's estate gave the surface owners no reason to believe an internet search would have located potential heirs).

{¶32} The Supreme Court upheld our decision, finding a lack of reasonable diligence because the surface owners failed to attempt personal service at the last known address and "failed to search public records beyond the county where the mineral interests were located, despite having knowledge that the mineral-interest holder did not reside within that county when the reservation was made * * *." *Fonzi*, 169 Ohio St.3d 70 at ¶ 28. In general, surface owners must not disregard information about the holder in the public records in order to proceed directly to publication. *See id.* (on the subject of last known address).

**{¶33}** Where the holders provided evidence on the subsequent ease of finding heirs, we have pointed out the reasonableness test evaluates the process actually used based on the information available to the surface owners. *Beckett v. Rosza*, 2021-Ohio-4298, 181 N.E.3d 1216, ¶ 32-33 (7th Dist.). However, we then found the surface owners failed to make a reasonably diligent search for holders before serving notice by publication where their attorney reviewed probate records showing the holders may be found in other states. *Id.*

<u>ASSIGNMENT OF ERROR ONE</u>

**{¶34}** Challenging the declaratory judgment entered in favor of the Hines heirs, Appellants' first assignment contends:

"THE TRIAL COURT ERRED BY FAILING TO GRANT APPELLANT'S MOTION FOR SUMMARY JUDGMENT AND BY FAILING TO ISSUE A DECLARATORY JUDGMENT IN THE APPELLANTS' FAVOR THAT JEFFCO RESOURCES, INC. CONDUCTED A REASONABLY DILIGENT SEARCH FOR THE HOLDERS OF THE MINERAL INTEREST AT ISSUE PRIOR TO SERVING ITS NOTICE OF ABANDONMENT BY PUBLICATION UNDER THE PROVISIONS OF OHIO'S DORMANT ACT, R.C. 5301.56(E)."

**{¶35}** The parties acknowledge the county records are the baseline for a reasonable search for heirs and a further search is not automatically required but may be required depending on the factual circumstances and knowledge gained by the searcher. The parties dispute whether the probate records gave rise to the duty to search further.

**{¶36}** Appellants argue the county records did not give rise to an obligation to search for heirs by other methods because the estate tax documents in the probate records for Birney Hines, who died intestate without issue, did not identify the joint account holders as his heirs and the application for release from administration specifically says: the heirs were unknown, the addresses of heirs could not be ascertained with reasonable diligence, and notice was provided by publication. Appellants emphasize the 1974 application was memorialized by a probate court judgment entry. They say they should be entitled to rely on this entry (40 years later) when determining if Birney Hines had reasonably identifiable heirs, claiming any inference that may have arisen from the existence of the joint accounts was negated by the other probate filings.

<u>Case Nos. 22 HA 0007, 22 HA 0008, 22 HA 0009</u>

{¶37} Appellants also say the expert's 2016 search was not material because he already possessed the name of a living heir to begin his interviews and because he searched for heirs on a subscription service, which he acknowledged was continually updated. The Hines heirs say this is a "red herring" argument. Focusing on the information available to Jeffco in the public records, the Hines heirs urge the names of the joint and survivor account holders listed in the estate records of Birney Hines triggered a duty to investigate them as potential heirs. They say the efforts were not reasonable because no investigation was even attempted to ascertain if the individuals listed were heirs. The Hines heirs also suggest Jeffco should have realized the heirs had no incentive to identify themselves in the estate proceedings because there was no money, the funeral home was still owed $200, and an attorney was owed $400.

{¶38} As to Appellant's argument that the Hines heirs were required to submit evidence to show what information could have been discovered in 2012 regarding the joint account holders (as to heirship and addresses), we reiterate the burden is on the surface owners to show the steps they took were reasonably diligent based on their knowledge, including the knowledge gained from the baseline search of the public records. *Fonzi*, 169 Ohio St.3d 70 at ¶ 23, 27. Distinguishably, a case cited by Appellants, which was issued before *Fonzi* and *Gerrity*, reviewed an affidavit attesting to what could or could not be found *in the title search*. *Hutchins v. Baker*, 2020-Ohio-1108, 153 N.E.3d 140, ¶ 35 (7th Dist.) (where the surface owners provided a title searcher's affidavit stating "no one searching the Monroe County records" at the relevant time period could have found the item relied on by the holders "because of how it was indexed").

{¶39} Appellants urge the fact that a probate record shows a joint and survivor account holder's last name matches the mineral holder's last name does not trigger a duty to investigate for heirship. We reiterate each case depends on the totality of the facts known to the surface owner or available during the search of the county records. *Fonzi*, 169 Ohio St.3d 70 at ¶ 27, quoting *Gerrity*, 162 Ohio St.3d 694 at ¶ 36. Distinctly, a case cited by Appellants involved an argument that the last name of *surface grantees* (in the deed with original mineral reservation) should have caused later surface owners to question whether the severing grantor transferred the surface to relatives (i.e., whether a past predecessor *in the surface owner's own surface title* was a child of the mineral

Case Nos. 22 HA 0007, 22 HA 0008, 22 HA 0009

holder). *Crum v. Yoder*, 7th Dist. Monroe No. 20 MO 0005, 2020-Ohio-5046, ¶ 58. The case also predated the Supreme Court pronouncements in *Gerrity* and *Fonzi.*

**{¶40}** Here, Jeffco's baseline search revealed the record mineral holder died testate and left all property to her husband, Birney Hines, whose 1974 estate showed he was deceased as well. An appraiser for his estate found no probate assets except for money in one checking account, which was distributed to the funeral home without quite covering the amount owed. The estate also owed attorney fees. The probate court's judgment granting release from administration memorialized the service of notice by publication.

**{¶41}** Although the application for release of the estate of Birney Hines from administration said heirs were unknown when the estate commissioner's signature on the application was notarized, the affidavit for service by publication the commissioner signed one week later said: "*the residence* of the heirs of said estate are unknown and cannot be with reasonable diligence ascertained." (Emphasis added.) The next paragraph reiterated "the heirs places of residence cannot be ascertained" and cited R.C. 2703.14(F) ("In an action by an executor, administrator, guardian, or trustee seeking the direction of the court respecting the trust or property to be administered and the rights of the parties in interest, when the defendant is not a resident of this state or his place of residence cannot be ascertained."). The commissioner's affidavit for publication did not mention the statement in the application for release that the heirs themselves were unknown.

**{¶42}** Most importantly, this was not all the information to be gleaned from the probate court records, and the diligence required in 1974 for identifying or locating heirs based on this information (for an estate valued in the negative) does not necessarily translate to the diligence required in 2012 for identifying or locating heirs. The probate court records revealed the existence of various non-probate assets held by Birney Hines joint and survivor with seven named individuals. These records were attached to Appellants' own summary judgment motion and their former attorney who reviewed the public records for the 2012 DMA proceedings incorporated these records into his affidavit regarding his search.

**{¶43}** From these probate records, it can be observed that Birney Hines kept various certificates of deposit, issued the year before his death, in safe deposit boxes.

Birney Hines jointly owned one certificate of deposit with Clarence Hines, who had the same last name. Birney Hines owned another certificate of deposit (for $8,000) and a savings account with William Sinfield. This individual was listed on the registration for the two safe deposit boxes where Birney Hines stored the certificates of deposit. *He also signed the estate's tax return after the notice by publication was accomplished* and memorialized by the court. And, he lived in the same county as the records being searched.

{¶44} We cannot say this is one of those cases where the baseline search "offered no clue as to the identity of any potential successors or assigns." *Gerrity*, 162 Ohio St.3d 694 at ¶ 36 (where the public records search revealed no indication the sole record holder was deceased). With the public records search revealing the above-recited information involving the last known holder's non-probate assets, this case falls within those circumstances that "require the surface owner, in the exercise of reasonable diligence, to continue looking elsewhere to identify or locate a holder." *Id.* In other words, ignoring the information in the probate records did not constitute "reasonable diligence in attempting to identify and locate the holders of the mineral interest." *Fonzi*, 169 Ohio St.3d 70 at ¶ 2. Appellants did not meet their burden of showing their efforts were reasonably diligent under the circumstances of this case. Accordingly, the trial court's judgment is affirmed.

ASSIGNMENT OF ERROR TWO

{¶45} Appellants' second assignment of error claims:

"THE TRIAL COURT ERRED IN FAILING TO GRANT SUMMARY JUDGMENT IN APPELLANTS' FAVOR ON DEFENDANTS COUNTERCLAIMS."

{¶46} Appellants present this assignment of error in case this court were to reverse the trial court's declaratory judgment under the first assignment of error. They claim they would be entitled to summary judgment on the counterclaims seeking ownership declarations and damages based on the title encumbrance and property entry. Appellants reason if they used reasonable diligence, then the mineral interest was abandoned under the 2012 DMA proceedings and an ownership declaration would be entered in their favor disposing of the counterclaims.

{¶47} However, as the Hines heirs point out, the trial court did not reach the heirs' alternative arguments contesting Jeffco's reliance on the 2012 DMA proceedings for

reasons such as: insufficient language in the required filings; failure to file the memorialization until 2016; or Jeffco was estopped from relying on the 2012 proceedings due to the voluntary reopening of the DMA proceedings in 2017 by publishing a new notice of abandonment. In fact, the trial court specifically said the other issues raised in response to the motion for summary judgment, such as estoppel, were moot because of the court's holding. Accordingly, the issues would not have been ruled on by this court in the first instance. *See, e.g., Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 360, 604 N.E.2d 138 (1992) (even a de novo summary judgment review does not mean the appellate court should make the first ruling on issues the trial court never reached); *West v. Bode*, 2019-Ohio-4092, 145 N.E.3d 1190, ¶ 61 (7th Dist.) ("We generally refrain from ruling on arguments and claims not ruled upon by the trial court as the issues are not ripe for our review where the trial court proceeded as if they were moot due to another ruling."), *aff'd*, 162 Ohio St.3d 293, 2020-Ohio-5473, 165 N.E.3d 298 (affirming our remand). *See also Taylor v. Crosby*, 150 Ohio St.3d 344, 2016-Ohio-5820, 81 N.E.3d 1223, ¶ 1 (remanding *to the trial court* to address arguments on the 2006 Dormant Mineral Act which were not addressed by the appellate court as the trial court did not rule on them).

**{¶48}** However, as Appellants acknowledge, this assignment of error was presented by Appellants alternatively, *in the event their first assignment of error was successful.* Because we are affirming the trial court's declaratory judgment for the Hines heirs under the first assignment of error, the second assignment of error is moot and need not be addressed. We have affirmed the trial court's decision that the DMA abandonment proceedings were ineffective and the Hines heirs are the mineral holders. The case can proceed in the trial court on the remaining counterclaims on remand.

**{¶49}** For the foregoing reasons, the trial court's decision is affirmed.

Waite; J., concurs.

D'Apolito, P.J., dissents without dissenting opinion.

Case Nos. 22 HA 0007, 22 HA 0008, 22 HA 0009

[Cite as *Jeffco Resources, Inc. v. Abrecht*, 2023-Ohio-4712.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Harrison County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**