[Cite as *Bednarz v. Henderson Family Ents, Ltd.*, 2026-Ohio-1297.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## HARRISON COUNTY

MAUREEN BEDNARZ et al.,

Plaintiffs-Appellees,

v.

HENDERSON FAMILY ENTERPRISES, LTD., et al,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 HA 0002**

---

Civil Appeal from the
Court of Common Pleas of Harrison County, Ohio
Case No. CVH 2020 0074

**BEFORE:**
Carol Ann Robb, Mark A. Hanni, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jeffrey J. Bruzzese*, Bruzzese, Hanlin & Bruzzese, LLC, for Plaintiffs-Appellees and

*Atty. Jon A. Troyer*, Arnold Gruber, Ltd., for Defendants-Appellants and

*Atty. Matthew W. Onest,* Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A. for Defendants/Appellees.

Dated: April 9, 2026

**Robb, J.**

**{¶1}** This case concerns the ownership of oil and gas rights underlying 160 acres in Harrison County, Ohio. Appellants, Henderson Family Farm Enterprises, Ltd. and Stuart Henderson, Jr. (collectively the Hendersons), appeal three judgments issued July 23, 2025 addressing competing motions for summary judgment. The trial court generally concluded the Hendersons' abandonment efforts under Ohio's Dormant Mineral Act (DMA) were ineffective.

**{¶2}** The Hendersons also appeal five other judgments: the May 5, 2025 decision granting Appellees' motion for a protective order; the July 3, 2024 judgment granting Appellees leave to supplement their summary judgment motion; the November 14, 2022 decision granting Encino judgment on the pleadings; the November 14, 2022 decision granting Encino summary judgment; and the April 19, 2022 judgment granting Appellees' motion to amend their complaint.

**{¶3}** Although the Hendersons appealed from eight judgments, the assignments of error properly before us and considered herein arise from two of the three decisions issued July 23, 2025 granting summary judgment. The Hendersons argue they properly abandoned the once severed mineral interests and title to the same should be quieted in their favor. The Hendersons contend they used reasonable diligence in their search for the mineral rights holders; certain parties lacked standing to challenge the abandonment; the trial court erred in granting summary judgment against a non-existent party and a deceased party; and the court erred by granting summary judgment in favor of Means and Doxzen since they did not assert affirmative claims for relief.

**{¶4}** For the following reasons, we affirm the trial court's decisions granting summary judgment in favor of plaintiffs and the Means and Doxzen defendants on count one of the second amended complaint.

Statement of the Case

**{¶5}** Appellees are comprised of the heirs and assignees of John W. Means. The initial complaint for declaratory judgment and other claims for relief was filed by ten named plaintiffs on November 20, 2020 against defendants, Henderson Family

Enterprises, Ltd. Stuart Henderson, Jr., and several Encino defendants, i.e., Encino Acquisitions Partners, LLC, Encino Energy, LLC, EAP Ohio, LLC. Attached to the complaint are multiple documents, including Stuart J. Henderson, Jr.'s affidavit of abandonment and corrected affidavit of abandonment concerning two parcels located in Harrison County.

{¶6} Initial discovery was conducted. The Hendersons moved for a protective order and sanctions, contending Stuart Henderson was improperly subpoenaed to testify when he was a named defendant. (August 16, 2021 Motion for Protective Order.) The Hendersons also moved to compel certain responses from Appellees and sought sanctions for Appellees' failure to comply with the discovery rules. (December 6, 2021 Motion to Compel.)

{¶7} Thereafter, the parties came to an agreement on the outstanding discovery issues. The court found sanctions were inappropriate as no prejudice occurred. Stuart Henderson, Jr. withdrew his motion for a protective order and request for sanctions, noting the parties reached an agreement regarding his deposition and testimony. (August 25, 2021 Notice.) That same date, the trial court issued a judgment regarding an August 17, 2021 phone conference. It states the motion for sanctions and request for Stuart's deposition testimony were withdrawn and Stuart would not testify "in any manner in this case." It also states the recorded affidavit of abandonment "recorded years ago in the record chain of title" was not included in or encompassed by this stipulation. (August 25, 2021 Judgment.)

{¶8} Appellees filed their second amended complaint February 28, 2022 against Henderson Family Enterprises, Ltd. Stuart Henderson, Jr., individually and as trustee of the Henderson Family Revocable Trust and several Encino defendants, Encino Acquisitions Partners, LLC, Encino Energy, LLC, EAP Ohio, LLC.

{¶9} The first nine plaintiffs are individuals claiming to be owners and successors in interest to 160 acres of minerals underlying property located in Harrison County, Ohio. Wolf Run II, LLC is a plaintiff who claims to own a leasehold interest in these minerals. Wolf Run likewise claims to be a fee title owner and successor in interest of the minerals underlying 160 acres obtained via oil and gas deeds, attached to the complaint as Exhibit B. (Second Amended Complaint.)

{¶10} The second amended complaint likewise identified more than 50 additional defendants as having a possible interest in the property subject to the lawsuit to allow them to raise potential claims they may have to the property. John F. Means and Patricia Doxzen were named as defendants in this manner. (Second Amended Complaint & March 13, 2022 Request for Service.)

{¶11} The complaint alleges Stuart Henderson, Jr., individually and as the trustee of the Henderson Revocable Trust, wrongfully claims ownership of the mineral interests via affidavits of abandonment filed in 2011 and 2012. The complaint contends Stuart Henderson Jr. and Thelma Jean Henderson acquired the surface estate via warranty deed dated December 19, 2000. They then placed their property in the Henderson Family Revocable Trust in December of 2003. The complaint alleges the Trust filed affidavits of abandonment in 2011 and 2012, but the same are ineffective based on their failure to comply with DMA. (Second Amended Complaint.)

{¶12} Appellees assert claims for declaratory judgment and quiet title, trespass, ejectment, and forcible entry and detainer. For relief, Appellees asked the trial court to declare the Hendersons failed to comply with the DMA and thus did not acquire the minerals underlying the subject properties via abandonment. Appellees likewise sought determinations that the Hendersons' leases regarding the mineral rights are void and they owe plaintiffs damages in excess of $25,000. Among other things, Appellees sought punitive damages, a decree of ejectment, and an order restoring the property to Appellees. They likewise sought an award of attorney's fees, expenses, and court costs. (Second Amended Complaint.)

{¶13} John F. Means and Patricia Doxzen filed their answer to the second amended complaint and admitted they own a portion of the subject mineral rights. They also asked the trial court to determine via declaratory judgment that they own a portion of the mineral rights at issue and for an award of attorney's fees and costs. (May 13, 2022 Means & Doxzen Answer.)

{¶14} The Hendersons filed their answer to the second amended complaint and cross-claim against the three Encino defendants. The Hendersons pointed out the entity is incorrectly named in the complaint and the name of the entity is Henderson Family Farm Enterprises, Ltd. They asked the trial court to determine via declaratory judgment

that the mineral interests had been properly abandoned and reunited with the surface estate.  For their first affirmative claim, the Hendersons allege Encino violated its joint defense agreement with them by cooperating and working with the plaintiffs.  The Hendersons also contend Encino breached the parties' oil and gas lease by discontinuing the payments of royalties owed under the agreement.  (March 23, 2022 Hendersons' Answer & Cross-Claim.)

{¶15} The Encino defendants filed their answer to the cross-claim and cross-claimed against the Hendersons.  Encino alleged if it is determined that the Hendersons are not the owners of the mineral interests, the Hendersons will be in violation of the warranty of title provision in their lease agreement.  (April 21, 2022 Encino's Answer & Cross-Claim.)

{¶16}  The Hendersons filed a notice of suggestion of death of Stuart Henderson, Jr. stating he passed away April 3, 2022.  (April 27, 2022 Notice.)

{¶17}  The trial court issued a scheduling order and set a discovery deadline of March 1, 2024.  The court also set a dispositive motion deadline of April 26, 2024.  It ordered all depositions intended for trial to be submitted to the court 14 days before trial, which was set for September 25, 2024.  (Nov. 28, 2023 Judgment.)

{¶18} Encino moved to enforce a settlement agreement with Appellees under seal.  Appellees opposed the motion to enforce, contending the parties never reached an agreement.  The court held a hearing on the matter, and denied the motion to enforce.  It found no enforceable agreement. (Oct. 12, 2023 Judgment.)

<u>Chain of Title</u>

{¶19}  John M. McLandsborough acquired approximately 165 acres located in Harrison County, Ohio via two deeds dated September 1864 and September 1869.  Several conveyances later, John W. Means acquired the real property via three transactions.  He acquired 100 acres via warranty deed dated September 13, 1916; five acres via warranty deed dated October 14, 1916; and 60 acres via warranty deed recorded April 2, 1924.

{¶20}  John W. Means subsequently conveyed 160 acres to B.F. Brown via warranty deed recorded April 15, 1943.  Means reserved the mineral interests in this

conveyance. It states Means was: "Saving and excepting out of the grant hereby made all mines and minerals under the said premises hereby conveyed, including oil and gas."

**{¶21}** The mineral rights were later conveyed via a certificate for transfer of real estate recorded August 27, 1953. This document states Means died testate and his estate was being administered in Stark County, Ohio by Francis M. Means, the administrator of his estate. The certificate states Means' eight children were each inheriting 1/8 of the mineral rights underlying the real property. It lists each heir's name, age, address, and relationship to the decedent. The addresses for the eight heirs reflect that four resided in Canton, Ohio; one had a Columbus, Ohio address; one had an Akron, Ohio address, one lived in New Mexico; and one lived in California. (August 27, 1953 Certificate of Transfer.)

**{¶22}** One of John W. Means' eight heirs, Francis M. Means, died testate and a certificate of transfer of real estate was recorded in November of 1963 showing Francis conveyed 100% of his 1/8 mineral rights interest to his wife, Arline M. Means. This certificate lists Arline's address in Canton, Ohio and shows it was issued by the Stark County Probate Court.

**{¶23}** The next certificate of transfer of record is dated November 12, 1976. It memorializes the transfer of the surface estate on the passing of Alva Ashcraft to Freda Ashcroft. This record refers to three parcels. The second two parcels are the 160 acres at issue here. It repeats the mineral right reservation, stating that it was "EXCEPTING AND RESERVING all mines and minerals under said premises, including oil and gas."

**{¶24}** Stuart Henderson, Jr. and Thelma Jean Henderson acquired the surface estate as husband and wife via warranty gift deed recorded December 19, 2000. This deed reflects the conveyance of two parcels totaling 160 acres. The conveyance contains the mineral right reservation, stating in part: "EXCEPTING AND RESERVING 'all minerals under said premises, including oil and gas.'"

**{¶25}** Stuart Henderson, Jr. and Thelma Jean Henderson subsequently conveyed the same two parcels, consisting of 160 acres, plus an additional parcel, consisting of three tracts, by warranty deed dated December 23, 2009. The Hendersons conveyed the three parcels to Stuart Henderson Jr. and Thelma Jean Henderson, as Trustees of the

Case No. 25 HA 0002

Henderson Family Revocable Trust dated December 23, 2003. This deed does not contain the mineral right reservation.

**{¶26}** After the surface estate was conveyed to the trust, the Hendersons recorded an affidavit of abandonment in February of 2011 and a corrected affidavit of abandonment in June of 2012. These affidavits of abandonment were attached to the initial complaint.

**{¶27}** Both affidavits of abandonment state the affiant, Stuart Henderson, Jr. "attempted to serve the eight record title owners of the mineral reservation at their last known addresses by certified mail. All eight mailing[s] were returned by the United States Postal Service with the designation addressee unknown." Both affidavits also state Henderson "caused a notice of his intent to file this affidavit of abandonment of the mineral interest reserved by John W. Means to be published in the Harrison News Herald[,]" and as a result, the mineral interests of Edith E. Kidwell, Margaret F. Farber, John W. Means, Nonna O. Donald, Mary J. Studer, Mabel I. Foster, Frances Means, and Sarah I. Wallick are abandoned and vested "in Stuart Henderson, Jr., Trustee of the Henderson Family Revocable Trust dated December 23, 2003." (Affidavit of Abandonment & Corrected Affidavit of Abandonment.)

Motions for Summary Judgment

**{¶28}** After the exchange of discovery, the parties filed competing motions for summary judgment. The Hendersons' motion for summary judgment urged the court to grant them summary judgment because neither was properly a party to the proceedings. The Hendersons also argued the disputed interests were properly abandoned under the DMA and they were entitled to quiet title to the same.

**{¶29}** Certain defendants did not answer and default judgment was granted in plaintiffs' favor. Additionally, other defendants were dismissed since Wolf River acquired their applicable rights to the mineral rights.

**{¶30}** Appellees' motion for summary judgment argued they were entitled to judgment as a matter of law on count one of their complaint, seeking declaratory judgment and the right to quiet title in their favor. They alleged the Hendersons' attempted abandonment was deficient since the Hendersons failed to use reasonable diligence to identify the holders of the mineral rights before resorting to notice by publication. And

Case No. 25 HA 0002

had the Hendersons employed reasonable diligence, Appellees claimed their out-of-county addresses would have been readily located.  (April 26, 2024 Plaintiffs' MSJ.)

**{¶31}** Encino filed a motion for summary judgment against the Hendersons. Encino asserted it was entitled to judgment as a matter of law on count one of Hendersons' cross-claim for breach of their joint defense agreement.  Additionally, Encino moved for judgment on the pleadings on count two of the Hendersons' cross-claim, asserting a claim for breach of their lease agreement.  (June 24, 2022 Motion.)  The Hendersons opposed both aspects of the motion.

**{¶32}** The Hendersons moved for summary judgment.  They asserted Stuart was entitled to judgment as a deceased individual who had not been substituted in the proceedings during the time proscribed by Civ.R. 25(A)(1).  Moreover, the remaining Hendersons asserted they were entitled to judgment as a matter of law on Appellees' claim to the minerals.  The Hendersons urged the trial court to find their abandonment undertaking was proper; the Appellees failed to preserve their rights; and there were no R.C. 5301.56(B)(3) saving events.  The Hendersons argued:  "Nothing in the record indicates that Mr. Henderson had any knowledge of any successors or assigns living anywhere else than where the certified mailings were sent. Nothing in the record indicates that at that time, any reasonable search of public records would yield additional heirs." They attached the affidavit of abandonment and corrected affidavit of abandonment executed by Stuart Henderson, Jr. in support of their motion.  (April 26, 2024 Henderson MSJ.)

**{¶33}** Separately, Encino moved for summary judgment against Appellees. Encino argued the cause should be dismissed based on Appellees' failure to name indispensable parties.  Additionally, Encino moved for summary judgment on counts two (trespass), four (ejectment), and five (forcible entry and detainer) of Appellees' complaint because it has leases with the Hendersons and the Means heirs, which authorize Encino to produce oil and gas from the disputed property regardless of whether the Hendersons' abandonment was successful.   (April 26, 2024 Encino MSJ.)

**{¶34}** EAP Ohio separately moved for summary judgment on its cross-claim against the Hendersons.  EAP alleged if the Appellees were successful on their claims that the Hendersons do not own the oil and gas rights, then EAP is entitled to judgment

as a matter of law that the Hendersons breached the warranty of title in their oil and gas lease with EAP. (April 26, 2024 EAP MSJ.)

**{¶35}** Defendants Means and Doxzen moved for partial summary judgment in their favor on counts one and two of Appellees' second amended complaint. They agreed with Appellees' contentions and arguments and alleged they were likewise entitled to summary judgment. They asserted the Hendersons' efforts to abandon the property rights were ineffective because the Hendersons did not employ the necessary reasonable diligence required before publishing notice under the DMA. And upon employing Ohio Supreme Court precedent, they urged the court to find their mineral rights still valid and the abandonment ineffective. (April 26, 2024 Means & Doxzen MSJ.)

<u>The Trial Court Judgments</u>

**{¶36}** The trial court issued three judgments July 23, 2025 on the competing summary judgment motions.

**{¶37}** The trial court held in its first July 23, 2025 judgment that the Henderson affidavit of abandonments were ineffective because they did not satisfy R.C. 5301.56. The court found the Hendersons failed to establish they used reasonable diligence in their search for the holders of the mineral interests. The court noted the Hendersons did not examine the probate records in the counties in which the named holders resided. The court ordered title to the minerals quieted in favor of the heirs of John Means, the plaintiffs, and against the Hendersons. The court ordered the Harrison County Recorder's Office to cross reference the recorded judgment entry through a marginal notation on the recorded deed. The court entered judgment in favor of the Appellees on count one of the complaint, i.e., declaratory judgment and quiet title. The trial court did not address the remaining claims and found there was no just cause for delay. (July 23, 2025 Judgment.)

**{¶38}** Separately, the trial court granted John Means and Patricia Doxzen partial summary judgment. This judgment was also issued July 23, 2025. The court concluded it was rendering judgment "in favor of Plaintiffs and Means Parties and against the Henderson Defendants on Counts One and Two of the Second Amended Complaint." The judgment likewise states the affidavit indicates the Hendersons attempted to serve the eight heirs via certified mail, but "[t]here is no proof of mailing attached to the Affidavit of Abandonment. The Henderson Defendants have not submitted any evidence outside

the Affidavit of Abandonment to prove certified mailing occurred." Further, the affidavit does not indicate the efforts they employed to search for the holders. The court also found the defense of laches inapplicable and the mineral rights were not abandoned. The court found there was no just cause for delay and its judgment is a final appealable order.

**{¶39}** The third judgment issued July 23, 2025 found the Hendersons breached their warranty of title contained in their lease with Chesapeake, which was later conveyed to EAP Ohio. This decision grants summary judgment in EAP's favor on the issue of liability and set a status conference on the issue of damages for that breach. This judgment does not state it is a final appealable order or there is no just cause for delay.

**{¶40}** The remaining four judgments appealed include the following.

**{¶41}** The May 3, 2025 judgment granted Appellees' motion for a protective order. In this judgment, the court ordered the deposition of Maureen Bednarz not to be taken because the notice was untimely and "unduly burdensome under the circumstances." (May 3, 2025 Judgment.)

**{¶42}** The July 3, 2024 judgment granted Appellees leave to supplement their reply to Encino's motion for summary judgment. (July 3, 2024 Judgment.)

**{¶43}** The November 14, 2022 judgment granted Encino's motion for partial judgment on the pleadings. The court concluded count two of Henderson's cross-claim lacked merit as a matter of law. This judgment does not state it is a final appealable order or there is no just cause for delay. (November 14, 2022 Judgment.)

**{¶44}** The second judgment issued November 14, 2022 held that count one of Henderson's cross-claim against Encino lacked merit. It concluded the Encino defendants did not breach or violate their joint defense agreement. This judgment does not state it is a final appealable order or there is no just cause for delay. (November 14, 2022 Judgment.)

**{¶45}** The last judgment appealed was issued April 19, 2022. It overruled the Hendersons' motion to strike and granted Appellees' motion to amend their complaint. The court found good cause existed to amend the complaint in order to name necessary parties for a complete resolution of the pending issues. (April 19, 2022 judgment.)

<u>Appellate Proceedings</u>

**{¶46}** The Hendersons raise six assignments of error. Thereafter, this court granted Encino's partial motion to dismiss. We found three of the judgments appealed are not final appealable orders. Thus, we dismissed the appeal in part regarding the trial court's July 23, 2025 judgment granting partial summary judgment in favor of Encino on its breach of warranty cross-claim against the Hendersons and the two judgments regarding Hendersons' cross-claim against Encino issued November 14, 2022. We determined assignment of error number five is not properly before us.

**{¶47}** We found the two judgments issued November 14, 2022 relative to the cross-claims between the Hendersons and Encino defendants and the judgment issued July 23, 2025 granting Encino summary judgment are not final orders. We determined the Hendersons' assigned errors one through four and six are properly before us. (December 12, 2025 Order.)

**{¶48}** The trial court granted the Hendersons' motion to stay the trial court proceedings pending the outcome of this appeal. (November 10, 2025 Judgment.)

<u>Summary Judgment Standard of Review</u>

**{¶49}** We review awards of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civil Rule 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated;
>
> (2) the moving party is entitled to judgment as a matter of law; and
>
> (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

**{¶50}** The party moving for summary judgment bears the initial burden of demonstrating the absence of genuine issues of material facts concerning the essential elements of the non-moving party's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). The moving party must support the motion by pointing to some evidence in the record of the type listed in Civil Rule 56(C). *Id.* at 292-293. If the moving party satisfies its burden,

the non-moving party has the reciprocal burden to demonstrate that a genuine issue of fact remains for trial. *Id.* at 293. The non-moving party may not rest on allegations or denials in her pleadings, but must point to or submit evidence of the type specified in Civil Rule 56(C). *Id.*; Civ.R. 56(E).

**{¶51}** "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.,* 67 Ohio St.3d 344, 346 (1993). Doubts are to be resolved in favor of the non-movant. *Leibreich v. A.J. Refrig., Inc.*, 67 Ohio St.3d 266, 269 (1993). A court "may not weigh the proof or choose among reasonable inferences." *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 121 (1980).

Assignments of Error

Reasonable Efforts Under Ohio's Dormant Mineral Act

**{¶52}** The Hendersons' first assigned error contends:

"The trial court erred in finding that Appellants did not act with reasonable diligence when conducting the search contemplated by R.C. § 5301.56(e)(i)."

**{¶53}** The Hendersons contend their affidavits of abandonment satisfied their statutory obligations. They allege the affidavits were prepared by counsel and set forth that the eight record title owners of the mineral rights were sent the same via certified mail at their last known addresses. Thereafter, when the certified mailers were returned as undeliverable, notice was served by publication. The Hendersons claim the same shows they exercised reasonable diligence by serving each at their last known address, and only thereafter did they proceed with service by publication. They argue they did not disregard information as to the holders' last known addresses; instead, they sent the requisite affidavits to each without success and each was returned and designated as "addressee unknown." Thus, the Hendersons claim they satisfied R.C. 5301.56(E) and summary judgment was warranted in their favor.

**{¶54}** Last, they claim Appellees' argument contending a lack of due diligence is unreasonable and the fact Stuart Henderson, Jr. is dead leaves them with no way of establishing their efforts. For the following reasons, we disagree.

**{¶55}** As stated, in February of 2011 and June of 2012, Stuart recorded an affidavit of abandonment and corrected affidavit of abandonment regarding the

subject property. Each affidavit states Stuart "attempted to serve the eight record title owners of the mineral reservation at their last known addresses by certified mail. All eight mailings were returned by the United States Postal Service with the designation of addressee unknown." Nothing in the affidavits or elsewhere demonstrates to what addresses these mailings were sent.

{¶56} The Hendersons urged the trial court to find the plaintiffs cannot prove Stuart did not exercise reasonable diligence in his search for the severed mineral interest holders. The Hendersons contend the plaintiffs failed to come forward with sufficient evidence to challenge their summary judgment allegations. They claim Appellees cannot and did not show the Hendersons' search satisfied the reasonable diligence standard and that they could not show what efforts were made because both Stuart and his attorney were deceased. The Hendersons claim, based on the lack of evidence, they are entitled to judgment as a matter of law. The Hendersons contend that unlike *Gerrity* and *Fonzi*, below, there is no evidence in the instant case showing they "knowingly disregarded information" about the last known residences of the holders of the mineral rights.

{¶57} Because they claimed to have properly undertaken the steps of abandonment and acted with reasonable diligence, the Hendersons assert Appellees were required to file a notice of preservation within 60 days. Since Appellees did not file a timely claim to preserve, the Hendersons claim the mineral holders' rights were effectively abandoned.

{¶58} The General Assembly enacted the Dormant Mineral Act in 1989 as a supplement to the Ohio Marketable Title Act to provide a mechanism for reuniting abandoned severed mineral interests with the surface estate. *Dodd v. Croskey*, 2015-Ohio-2362, ¶ 7-8. Courts are to liberally construe the DMA "to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record chain of title." R.C. 5301.55.

{¶59} Further, when concluding the DMA does not violate the Retroactivity Clause, the Supreme Court in *Corban v. Chesapeake Exploration., L.L.C.*, 2016-Ohio-5796, explained the 2006 version of the DMA was self-executing, meaning a surface owner is not required to pursue litigation to quiet title to a dormant mineral interest. Unlike

the 1989 DMA, the 2006 version automatically transfers the interest from the mineral rights holder to the surface owner by operation of law. *Id*. at ¶ 31. *Corban* explained:

> If neither a claim to preserve the interest nor an affidavit proving that a saving event occurred within the preceding 20 years is timely recorded, then the surface holder may record a notice that the mineral interest has been abandoned, and "the mineral interest shall vest in the owner of the surface of the lands formerly subject to the interest, and the record of the mineral interest shall cease to be notice to the public of the existence of the mineral interest or of any rights under it." R.C. 5301.56(H). This statute therefore operates to establish the surface owner's marketable record title in the mineral estate.

*Id.* at ¶ 30.

**{¶60}** The *Corban* Court also stated: "the legislature [by enacting the DMA] has merely provided a method for the surface holder to obtain marketable record title to an abandoned mineral interest without having to resort to litigation to have that interest declared abandoned." *Id.* at ¶ 35. Any alleged deficiencies with the surface owner's compliance with the abandonment process, like here, must be challenged in court.

**{¶61}** The statutory procedure for abandonment of a mineral right is commenced by the surface owners of the property providing notice. R.C. 5301.56(E) instructs:

> Before a mineral interest becomes vested under division (B) of this section in the owner of the surface of the lands subject to the interest, the owner of the surface of the lands subject to the interest shall . . . : (1) Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. . . . The notice shall contain all of the information specified in division (F) of this section.

**{¶62}** A surface owner's failure to satisfy R.C. 5301.56(E) precludes the application of the DMA and renders unnecessary any further analysis. *Albanese v. Batman*, 2016-Ohio-5814, ¶ 20.

**{¶63}** Before proceeding with service via publication, a surface owner must exercise reasonable diligence in identifying the holders of the severed mineral interests. A surface owner's failure to exert reasonable diligence in his search is a critical error in the process that precludes abandonment. *Gerrity v. Chervenak*, 2020-Ohio-6705, ¶ 41; *Fonzi v. Brown,* 2022-Ohio-901, ¶ 21. And "a holder's failure to file a notice of preservation or to comply with Ohio property law does not release a surface owner from his or her obligation to conduct a reasonably diligent search for holders prior to serving notice of abandonment by publication." *Beckett v. Rosza*, 2021-Ohio-4298, ¶ 33 (7th Dist.).

**{¶64}** The surface owner has the burden of proving she used reasonable diligence in attempting to identify and locate the mineral interest holders before resorting to serving notice of abandonment by publication. *Fonzi* at ¶ 23. Generally, a review of public property and court records in the county where the interest is located is sufficient and establishes a baseline of reasonable diligence. *Id*.

**{¶65}** Reasonable diligence does not always require the surface owner to search records outside of the county where the mineral interest is located when the mineral holder resided in that county and there is no indication she died, moved, or conveyed the interest to others residing outside the county. *Gerrity* at ¶ 32, 36.

**{¶66}** The Ohio Supreme Court has held a surface owner who fails to exercise reasonable diligence in their search for holders of the severed mineral interests is not entitled to abandonment. *Fonzi* at ¶ 21. The question is whether the surface owners actually exercised reasonable diligence in their search. If the surface owners did not, then mineral rights are not abandoned under the DMA. *Id*. at ¶ 22.

**{¶67}** Reasonable due diligence is not susceptible to a bright-line rule or test. *Sharp v. Miller*, 2018-Ohio-4740, ¶ 17 (7th Dist.). Internet searches are not required. *Gerrity v. Chervenak*, 2020-Ohio-6705, ¶ 30. However, a surface owner is required to consult the public property records in the county in which the surface property is located, including the chain of title and probate records. *Id.* at ¶ 35. This is the starting point for identifying the mineral interest holders. Information in the public records in the county of the surface estate may reveal facts that "would require the surface owner, in the exercise of reasonable diligence, to continue looking elsewhere to identify or locate a holder." *Id.*

Case No. 25 HA 0002

Whether further search efforts are required depends on the circumstance of each case. *Id*. at ¶ 36.

**{¶68}** When a review of the court and property records in the county where the interest is located indicates holders or holders' heirs may reside or be located in another county, reasonable diligence requires that avenue be pursued or investigated to locate the holders before a surface owner resorts to service by publication. *Gerrity* at ¶ 36.

**{¶69}** In *Fonzi v. Brown*, the surface owners did not search beyond Monroe County for the heirs of the mineral rights holders despite the fact that a review of the 1952 deed showed Fonzi lived in Washington County, Pennsylvania at the time she acquired the interest. *Fonzi* at ¶ 2. The surface owners published their notice of intent to deem the interests abandoned in the Monroe County newspaper.

**{¶70}** Thereafter the Fonzi heirs filed suit for quiet title, contending the surface owners failed to employ reasonable diligence in the search to locate and serve the holders. And because the abandonment process employed by the surface owners was flawed, Fonzis claimed their severed mineral interests remained viable. The trial court agreed with the surface owners and found the abandonment was complete.

**{¶71}** This court and the Ohio Supreme Court disagreed. On appeal, we explained that before serving notice by publication under R.C. 5301.56(E), the surface owners were required to exercise reasonable due diligence in searching for potential heirs to the mineral interests. Whether "reasonable due diligence" is satisfied depends on the facts and circumstances of each case. *Fonzi* at ¶ 22-23, 31; *Gerrity* at ¶ 25-26, 34. A surface owner must search beyond that county's records when a search uncovers knowledge that the mineral interest holder did not reside in that county when the reservation was made. *Fonzi* at ¶ 26.

**{¶72}** In *Moore v. SWN Prod. Co., LLC*, 2024-Ohio-5517, ¶ 9 (7th Dist.), we affirmed the trial court's decision finding abandonment. In *Moore*, the Zollingers retained an attorney to conduct the abandonment on their behalf. Their attorney documented his efforts in an affidavit and confirmed he located the last known address for severed mineral owners in Maryland. The address was contained in the Monroe County property records. Counsel sent the certified mail to that last known address before also publishing the notice of abandonment in the local Monroe County newspaper.

Case No. 25 HA 0002

**{¶73}** Upon examining whether reasonable efforts were met, this court held in part the appellants "failed to show that a search of Maryland records would have revealed information as to the identity or location of the holders of the Moore Interest." *Id*. at 17.

**{¶74}** The attorney in *Moore* did not search the Maryland records before sending the certified mailer to the last known address, which was undeliverable. The counsel in *Moore* sent the mailer to the out-of-state address obtained from the Monroe County record. The surface owners did not search the Maryland records before resorting to notice by publication. *Id*. at 22.

**{¶75}** Importantly, there was no evidence demonstrating a search of the Maryland public records would have produced "a better address [than the one in the severance deed] for the original holders or their heirs." *Id*. at ¶ 32. We emphasized the appellants did not "identify any information available in Hartford County, Maryland in September 2010 which would have given [appellees] a better address." *Id*. at ¶ 35. Thus, there was nothing in evidence showing the surface owners ignored an address. *Id.* We agreed with the trial court and found the abandonment effective.

**{¶76}** Unlike *Moore*, the holders in this case came forward with summary judgment evidence showing they located the heirs of John W. Means via a public record search of Stark County, Ohio. The affidavit of Richard R. Bell, attached to Appellees' summary judgment motion, states in pertinent part:

> 14.) Affiant confirms that one simple search made by Wolf Run Land 2 LLC in the probate records in Stark County, Ohio, for Margaret F. Farber, deceased, Wolf Run Land 2 LLC located a probated estate for Margaret F. Farber and her husband Samuel H. Farber.

> 15.) Affiant confirms that both Margaret F. Farber and Samuel H. Farber died testate in 1986 and 1990, respectively.

> 16.) Affiant confirms that both Last Will and Testaments of Margaret F. Farber and Samuel H. Farber devised all their property, both real and personal, to each other and then to their children Richard Harry Farber and Isabell Jean Coker, equally.

> 17.) Affiant confirms that in both estates there are addresses listed for both Richard Harry Farber and Isabell Jean Coker, being 3607 39th St.,

SW Canton, OH 44706 & 4844 Sherman Church Ave., SW Canton, OH 44706, respectively.

18.) Affiant visited Richard H. Farber on 3/27/2018 at his address, being the same address listed in both Margaret and Samuel Farber's estates, for him to execute a purchase and sales agreement for his interest in and to the mineral rights of the subject property.

19.) Affiant confirms that Isabell Jean Coker died testate in 2003 and her estate was administered in Stark County Probate Case No. 187944.

20.) Affiant confirms that Isabell Jean Coker was survived by her husband, John D. Coker, who was the sole beneficiary under her last will and testament.

21.) Affiant confirms that John D. Coker died intestate on December 4, 2011, and his estate was administered in Stark County Probate Case No. 214953.

22.) Affiant confirms that the only two heirs of Mr. Coker were identified in his estate were his daughters Judith Cooke Newell of 319 Country Estates Dr. Extension, Franklinville, NC 27248 and Penny Coker Sears, P.O. Box 234 East Templeton, MA 01438.

23.) Affiant states that Judith Coker Newell lived at the same address as listed in Mr. Coker's estate and when Wolf Run Land LLC made contact with her.

24.) Affiant was able to locate the mineral holders quickly, easily and without any financial expense by using the information in the record chain of title found in the recordings of the Harrison County Recorder's office by searching the probate records in Stark County.

{¶77} Moreover, the affidavit of Maureen Bednarz, dated July 16, 2024, was offered in support of Appellees' summary judgment motion. Bednarz states in her affidavit that she resides at 2128 40th St NE in Canton, Ohio. She also avers she is the granddaughter of John W. Means and daughter of Sarah Wallick. Bednarz confirms that Sarah Wallick's Stark County address is listed in the deeds recorded in Harrison County. Sarah died intestate with three children and a living spouse. Sarah "is found in the indicies

of the Stark County Recorder's office." Sarah's husband died testate in Stark County, and his estate filed in that county shows his estate was bequeathed to the couple's three children, one of whom is Maureen. Maureen attests that the address listed for her in her father's will and filed in that court is the same address where she currently resides. (Affidavit of Maureen Bednarz.)

{¶78} In light of these facts in evidence, we find *Moore* distinguishable. Unlike the facts in *Moore*, Appellees came forward with evidence demonstrating that better addresses were identifiable in the Stark County public records for at least three mineral right holders. Thus, had the Hendersons searched the public records in Stark County, Ohio, they should have located the same and could have sent the notice of abandonment via certified mail there.

{¶79} The Hendersons assert they should not be required to prove, and cannot prove, what efforts were undertaken by Stuart and the trust's attorney since both are now deceased. They assert the burden is on the holders. We disagree. The Ohio Supreme Court has held the burden is on the surface owner. *Fonzi* at ¶ 2.

{¶80} We agree with the trial court and conclude the Hendersons failed to employ reasonable diligence in their efforts to locate the interest holders before resorting to notice by publication. They did not search the Stark County public records despite the fact that the Harrison County property records showed four of the eight holders resided in Stark County. *Beckett,* 2021-Ohio-4298 at ¶ 32 (7th Dist.). Consequently, the Hendersons' attempt to abandon the severed mineral interests was ineffective.

{¶81} The Hendersons' first assignment lacks merit.

Standing

{¶82} The Hendersons' second assignment of error asserts:

"The trial court erred in granting Appellees' motions for Summary Judgment despite Appellants having raised the issue of standing."

{¶83} Next, the Hendersons allege Wolf Run and other plaintiffs lacked standing to bring this action because certain plaintiffs acquired their alleged purported interests *after* the abandonment was complete and noted on the original warranty deed that created the mineral interest.

Case No. 25 HA 0002

**{¶84}** In support of this argument, the Hendersons direct us to our decision in *Ohio River,* below*,* interpreting and applying R.C. 5301.56(H)(2)(c). The Hendersons contend anyone acquiring an interest after the abandonment and notice of failure to file was recorded does not obtain an interest therein and had notice of the abandonment. Thus, those individuals lack standing to challenge the abandonment.

**{¶85}** Standing presents a threshold issue. A party must have a personal stake in the outcome of the controversy to make a legal claim or seek judicial enforcement of a duty or right. *Moore v. Middletown*, 2012-Ohio-3897, ¶ 21. A plaintiff must demonstrate he suffered an injury caused by the defendant or traceable to the alleged conduct of the defendant, and the injury should have a legal or equitable remedy. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992). Whether established facts confer standing to assert a claim is a question of law, which we review de novo. *Portage Cty. Bd. of Commrs. v. Akron*, 2006-Ohio-954, ¶ 90.

**{¶86}** Standing does not turn on the merits of the plaintiffs' claims but rather on "whether the plaintiffs have alleged such a personal stake in the outcome of the controversy that they are entitled to have a court hear their case." *ProgressOhio.org, Inc. v. JobsOhio*, 2014-Ohio-2382, ¶ 7.

**{¶87}** A subsequent purchaser of an abandoned mineral right lacks standing to challenge the abandonment process when the record chain of title shows abandonment was complete *before* the transfers of the interests to the purchaser occurred. *Ohio River Resources, LLC v. Westfall*, 2025-Ohio-2379, ¶ 66 (7th Dist.). We reached our decision in *Ohio River* by applying this court's decision in *Cardinal Minerals, LLC v. Miller*, 2024-Ohio-3121 (7th Dist.) and R.C. 5301.56(H)(2)(c). In that case, we held Cardinal lacked standing to pursue its claims and explained: "Appellant [Cardinal Minerals, LLC] could not buy, and the Pfalzgraf Heirs could not sell, an interest that no longer existed in the public record." *Id.* at ¶ 23.

**{¶88}** However, since the abandonment in this case was ineffective, based on our conclusion the Hendersons did not employ reasonable diligence in their search for the holders before resorting to notice by publication, our precedent in which the abandonment was proper and automatically effective does not apply. The subsequent acquisition of the severed interests by Wolf Run and others after the record notice of abandonment are still

valid because the abandonment was ineffective here. Thus, Appellees had standing, and this assigned error lacks merit.

Incorrectly Named Parties

**{¶89}** The Hendersons' third assigned error asserts:

"The trial court erred in granting summary judgment against a non-existent party and a deceased party, and erred in denying summary judgment to that same deceased party."

**{¶90}** This assignment urges us to find the trial court erred by rendering judgment against a deceased party (Stuart Henderson, Jr.) and against an incorrectly named party (Henderson Family Farm Enterprises, Ltd.) when they repeatedly pointed out these issues during the underlying proceedings.

**{¶91}** The Hendersons suggest that pursuant to Civ.R.25(A)(1), the action should have been dismissed. They argue Stuart was the "relevant party involved in the abandonment process," and it would be prejudicial and unfair to hold his heirs responsible for acts or omissions he may have made before his death.

**{¶92}** As stated, Appellees' second amended complaint asserted claims against and named as defendants, Henderson Family Enterprises, LTD., Stuart Henderson, Jr., individually and as the trustee of the Henderson Family Revocable Trust, and the three Encino defendants. The complaint alleges Stuart Henderson, Jr., individually and as trustee wrongfully claimed ownership of the mineral interests herein. (Feb. 28, 2022 Second Amended Complaint.)

**{¶93}** The Hendersons filed their answer to the second amended complaint and cross-claimed against the Encino defendants. They asked the trial court to determine via declaratory judgment that the mineral interests had been properly abandoned and reunited with the surface estate. In this pleading, the Hendersons emphasized the entity was incorrectly named in the complaint and the correct name of the entity is Henderson Family Farm Enterprises, Ltd. The Hendersons acknowledged Stuart Henderson, Jr., acting as trustee for the Henderson Family Revocable Trust, executed an oil and gas lease. A copy of the lease is attached. (March 23, 2022 Answer & Cross-Claim.)

**{¶94}** Neither party attached a copy of the trust documents to their respective pleadings. The Hendersons filed a notice of suggestion of death of Stuart Henderson,

Jr. on April 27, 2022. Thereafter, no motion to substitute the heirs or descendants of Stuart Henderson, Jr. was filed by any party.

**{¶95}** The Hendersons contend they reasserted the fact that Stuart was deceased in "virtually every filing with the trial court." Notwithstanding, no party moved to amend the complaint or filed a motion to substitute the real party in interest.

**{¶96}** The evidence shows Stuart Henderson, Jr. and Thelma Jean Henderson acquired the surface estate as husband and wife via warranty deed recorded December 19, 2000. Stuart and Thelma subsequently conveyed the same to Stuart Henderson, Jr. and Thelma Jean Henderson as trustees of the Henderson Family Revocable Trust dated December 23, 2003. This warranty deed was recorded December 23, 2009.

**{¶97}** Thereafter, in February of 2011 and June of 2012, Stuart executed and recorded an affidavit of abandonment and a corrected affidavit of abandonment regarding the subject property. Both affidavits of abandonment state the mineral interest reserved by John W. Means were abandoned and had "vested in Stuart Henderson, Jr., *Trustee* of the Henderson Family Revocable Trust dated December 23, 2003." (Emphasis added.) (Affidavit of Abandonment & Corrected Affidavit of Abandonment.)

**{¶98}** Civ.R.25(A) states:

(A) Death.

(1) If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and shall be served on the parties as provided in Civ.R. 5 and upon persons not parties in the manner provided in Civ.R. 4 through Civ.R. 4.6 for the service of summons. Unless the motion for substitution is made not later than ninety days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Case No. 25 HA 0002

(2) In the event of the death of one or more of the plaintiffs or of one or more of the defendants in an action in which the right sought to be enforced survives only to the surviving plaintiffs or only against the surviving defendants, the action does not abate. The death shall be suggested upon the record and the action shall proceed in favor of or against the surviving parties.

{¶99} When a party dies, a court loses personal jurisdiction over that party. *Justice v. LeSueur*, 2002-Ohio-6429, ¶ 6 (7th Dist.), citing *Lierenz v. Bowen,* 1991 WL 38039, *3 (6th Dist. March 22, 1991). Thus, the effect of a suggestion of death is that personal jurisdiction over that party is temporarily abated, and the court is without authority to take any action with respect to the party-decedent's interest until a proper substitution of parties is made, service is obtained, and personal jurisdiction is regained. *Id.; Abood v. Nemer,* 128 Ohio App.3d 151, 165 (9th Dist. 1998). Where the decedent's successor or personal representative has not been substituted for the party-decedent, the result is a lawsuit with only one party because, in effect, there is no longer an opposing party over which the court can continue to retain personal jurisdiction. *Id.*

{¶100} However, when there is more than one defendant and one defendant dies, Civ.R.25(A)(2) dictates the action shall continue against the surviving defendants. The action does not end. Civ.R.25(A)(2); *Hunter v. Rhino Shield,* 2024-Ohio-261, ¶ 17 (10th Dist.). Again, the instant case had multiple defendants, and as such, the action should not have been dismissed.

{¶101} Moreover, notwithstanding the fact that no one substituted Stuart's heirs as the proper party in his place, the Hendersons fail to mention that Stuart was acting in a representative capacity when he caused the affidavits of abandonment to be recorded. It is not evident based on the record whether Stuart was a beneficiary of the trust. It is evident he was one of two named trustees acting as a fiduciary for the trust. The affidavits of abandonment both identify him as "trustee" and "owner of the . . . real property." Each affidavit of abandonment states the Means' mineral interest is "deemed abandoned . . . and vests in Stuart Henderson, Jr., Trustee of the Henderson Family Revocable Trust dated December 23, 2003." (March 22, 2011 Affidavit of Abandonment & June 18, 2012 Corrected Affidavit of Abandonment.)

{¶102} A trustee named as a party in his or her representative capacity or functioning in this capacity does not act in their personal capacity. *Phillips v. May*, 2004-Ohio-5942, ¶ 39-40 (11th Dist.). A trustee is someone who stands in a fiduciary role in trust for the benefit of another. *Black's Law Dictionary* (12th ed. 2024). A trustee acts as an agent or authorized representative.

{¶103} "[A] trustee may not be the sole trustee and the sole beneficiary of a trust. See *Hill v. Irons* (1953), 160 Ohio St. 21, 27, 113 N.E.2d 243, citing 54 American Jurisprudence 117, Section 137. This principle is codified in R.C. 5804.02(A)(5)." *UAP-Columbus JV326132 v. Young*, 2010-Ohio-485, ¶ 14 (10th Dist.).

{¶104} Because the surface estate is owned by the trust and the abandonment was undertaken on behalf of the trust, Stuart's death and the parties' subsequent failure to name the new trustee as a party defendant in this litigation had no substantive effect on the outcome of the proceedings.

{¶105} The failure to substitute the successor trustee in Stuart's place did not invalidate the trial court's summary judgment decisions on the propriety of the abandonment or its decision to issue declaratory judgment and quiet title in Appellees' favor. Thus, the first aspect of this assigned error lacks merit.

{¶106} As for the second aspect of this assignment of error, the Hendersons do not direct us to any law or authority in support of their argument concerning the incorrect naming of Henderson Family Farm Enterprises, Ltd.

{¶107} The burden of affirmatively demonstrating error on appeal rests with the party asserting it. App.R. 9 and 16(A)(7); *State ex rel. Fulton v. Halliday*, 142 Ohio St. 548 (1944). It is not the function of an appellate court to root out law in support of an appellant's otherwise unsupported contention. *Matter of E.T.*, 2023-Ohio-444, ¶ 58 (7th Dist.); *State ex rel. Petro v. Gold*, 2006-Ohio-943, ¶ 94 (10th Dist.).

{¶108} Because the second aspect of this assignment is conclusory and unsupported, we do not construct the argument for them. Thus, the Hendersons' argument that Henderson Family Farm Enterprises, Ltd. is an incorrectly named party is overruled. *State v. Bruce*, 2023-Ohio-4719, ¶ 56 (7th Dist.) (disregarding unsupported and conclusory arguments in appellant's brief).

{¶109} This assigned error is overruled in its entirety.

Statute of Limitations & Laches

{¶110} The Hendersons' fourth assignment asserts:

"The trial court erred in granting summary judgment when the asserted claims are barred by relevant statutory time limits."

{¶111} This assigned error is comprised of three arguments. The Hendersons assert Appellees' failure to file a claim to preserve their interest and lack of any other savings events acted as a waiver of their rights in light of the two notices of abandonment filed of record. The Hendersons also contend the holders' claims are barred by laches and a four-year statute of limitations. We disagree with each contention.

{¶112} First, the Hendersons refer us to Appellees', Means' and Doxzen's failure to file a claim to preserve their respective rights as waiving their rights to the same. We disagree.

{¶113} As set forth previously, before proceeding with service via publication under the DMA, a surface owner must exercise reasonable diligence in identifying the holders of the severed mineral interests. *Gerrity v. Chervenak*, 2020-Ohio-6705, ¶ 41. A "holder's failure to file a notice of preservation or to comply with Ohio property law does not release a surface owner from his or her obligation to conduct a reasonably diligent search for holders prior to serving notice of abandonment by publication." *Beckett v. Rosza*, 2021-Ohio-4298, ¶ 33 (7th Dist.).

{¶114} A surface owner's failure to satisfy R.C. 5301.56(E) precludes the application of the DMA and renders unnecessary any further analysis. *Albanese v. Batman*, 2016-Ohio-5814, ¶ 20. Absent successful abandonment, the mineral right holders' ownership remains. *Id.*

{¶115} Next, neither the laches nor statute of limitations arguments were raised in the Hendersons' April 26, 2024 motion for summary judgment regarding Appellees' claims. Thus, to the extent the Hendersons claim they are entitled to relief from Appellees' claims based on these arguments, the same were waived. *Senterra Ltd. v. Winland*, 2019-Ohio-4387, ¶ 38 (7th Dist.) (failure to raise an argument waives the right to raise the issue on appeal).

{¶116} However, the Hendersons did raise these arguments in their June 24, 2024 opposition to the Means and Doxzen motion for partial summary judgment. The

Hendersons assert Means and Doxzen waited ten years to raise their claims after abandonment was complete. The Hendersons contend the severed mineral interests constitute personal property subject to a four-year statute of limitations under R.C. 2305.09. We disagree.

**{¶117}** Mineral interests are real property until they are extracted from the land. *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, 88-89 (1953); *Moore Family Tr. v. Jeffers*, 2023-Ohio-3653, ¶ 26 (7th Dist.), citing *Peppertree Farms, L.L.C. v. Thonen*, 167 Ohio St.3d 52, ¶ 26.

**{¶118}** As stated, the issues in this appeal are limited to the trial court's decision on count one of Appellees' complaint. Count one asked the court to render declaratory judgment and quiet title to the mineral interests in favor of the Means heirs, their successors, and assigns. The judgments addressed the propriety of the Hendersons' abandonment efforts. The judgments before us do not award damages and do not address the claims for slander of title, trespass, or others.

**{¶119}** The underlying nature or subject matter of a claim determines the statute of limitations applicable to a declaratory judgment action. *Joseph Bro. Co., LLC v. Dunn Bros., Ltd*., 2019-Ohio-4821, ¶ 41 (6th Dist.). The Sixth District Court of Appeals has held that declaratory judgment actions for the recovery of real estate are generally subject to the 21-year limitation period in R.C. 2305.04. *Id.*

**{¶120}** Because the judgments on appeal quieted title to the mineral rights and determined the viability of the Hendersons' abandonment efforts, the personal property statute of limitations is inapplicable. Thus, this argument lacks merit.

**{¶121}** As for the Hendersons' laches argument, the four elements of laches are "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." (Citations omitted.) *In re Guardianship of Mull*, 2015-Ohio-5440, ¶ 68 (7th Dist.).

**{¶122}** As stated, Means and Doxzen were not plaintiffs herein and did not commence the litigation. They did not raise counterclaims or cross-claims. Instead, they defended the claims against them and asserted their ownership rights to the mineral

interests in their defense of the claims against them. The trial court determined their interests were viable and the Hendersons' abandonment efforts were ineffective.

**{¶123}** Thus, to the extent the Hendersons contend their rights are precluded under the doctrine of laches, we disagree. Since Means and Doxzen did not assert affirmative claims for relief, the Hendersons' argument that their claims were untimely and they lacked a legitimate excuse for the delay in filing their claims, lacks merit.

**{¶124}** Additionally, the Hendersons claim prejudice based on the death of Stuart Henderson and his attorney, who prepared the abandonment documents on his behalf. To the extent the Hendersons allege prejudice as a result of the lack of Stuart's testimony, they stipulated early on in the proceedings he would not testify.

**{¶125}** As detailed under the statement of the case, the parties reached an agreement regarding Stuart's deposition and testimony. (August 25, 2021 Notice.) The trial court stated in a judgment that the Hendersons' motion for sanctions and request for Stuart's deposition were withdrawn. The parties agreed Stuart would not testify "in any manner in this case." The judgment also states the recorded affidavit of abandonment "recorded years ago in the record chain of title" was not included in or encompassed by this stipulation. (August 25, 2021 Judgment.)

**{¶126}** Thus, the Hendersons should not be permitted to rely on his lack of testimony as demonstrating prejudice when Stuart was alive during the proceedings but they chose not to have him testify before his death. In light of the foregoing, we find the Hendersons' fourth assigned error lacks merit in its entirety.

**{¶127}** As stated, we decline to consider the Hendersons' fifth assigned error as it is not properly before us.

Defendants' Right to Judgment

**{¶128}** The Hendersons' sixth assigned error contends:

"The trial court erred in granting summary judgment against Appellants and in favor of parties that never filed a claim."

**{¶129}** Here, the Hendersons claim the Means and Doxzen defendants did not file affirmative claims for relief, and as such, the trial court erroneously rendered summary judgment in their favor. We disagree.

Case No. 25 HA 0002

{¶130} Appellees added Means and Doxzen as defendants who may have an interest in the proceedings via the second amended complaint. In their answer, Means and Doxzen claimed an interest in the mineral interests. Although they did not assert an affirmative claim for relief via a cross-claim or counterclaim, they asked the court for declaratory judgment in their favor and for the court to recognize their interests. Means and Doxzen sought quiet title to the mineral interests and a determination that the Hendersons' abandonment efforts were insufficient and ineffective. (May 13, 2002 Means & Doxzen Answer.)

{¶131} As stated, the trial court ultimately determined the Hendersons failed to comply with the mandatory statutory provisions, and as a result, their abandonment efforts were ineffective. Thus, the court held Appellees' rights to the mineral interests, as well as the Means and Doxzen defendants' rights to the mineral rights, were not abandoned under the DMA. The trial court recognized this in its judgments granting summary judgment in favor of Appellees and in favor of Means and Doxzen. (July 23, 2025 Judgments.)

{¶132} The Declaratory Judgment Act was enacted to provide a remedy where either none exists because a cause of action has not yet accrued or "the assertion of legal rights is dependent upon the act of a third party or upon the passage of time. Its basic purpose . . . is to relieve parties from acting at their own peril in order to establish their legal rights." (Citations omitted.) *Gray v. Willey Freightways, Inc.*, 89 Ohio App.3d 355, 362 (6th Dist. 1993). The Act is to be liberally construed. R.C. 2721.13.

{¶133} When declaratory relief is sought under Chapter 2721 of the Ohio Revised Code, "all persons who have or claim any interest that would be affected by the declaration shall be made parties to the action or proceeding." R.C. 2721.12(A). And R.C. 2721.03 states in part:

> [A]ny person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the instrument, . . . and obtain a declaration of rights, status, or other legal relations under it.

**{¶134}** Thus, regardless of the fact that Means and Doxzen did not assert affirmative claims for relief in the trial court proceedings, Appellees filed the action and named them as necessary and interested parties with a potential interest in the subject matter of the litigation. Pursuant to the provisions in Chapter 2721, the trial court was authorized to determine their rights to the interest. Accordingly, this assigned error lacks merit and is overruled.

<u>Conclusion</u>

**{¶135}** In light of the foregoing, the Hendersons' assignments of error lack merit. The trial court's two judgments issued July 23, 2025 granting declaratory judgment and quiet title in favor of the plaintiffs and the Means and Doxzen defendants are affirmed.

Hanni, J., concurs.

Dickey, J., concurs.

<u>Case No. 25 HA 0002</u>

————————————————

For the reasons stated in the Opinion rendered herein, it is the final judgment and order of this Court that the, trial court's two judgments issued July 23, 2025 granting declaratory judgment and quiet title in favor of the plaintiffs and the Means and Doxzen defendants are affirmed.  Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**